ROUTEN *v.* MCGEHEE.

4-7595 186 S. W. 2d 779

Opinion delivered April 16, 1945.

502

*Byron Bogard, Henry E. Spitzberg* and *Arthur L. Adams,* for appellant.

*Denver L. Dudley* and *E. P. Mathis,* for appellee.

GRIFFIN SMITH, Chief Justice. One of thirty allegations of error is that a $4,000 judgment against the physician-defendant was not supported by substantial evidence. Another is that the burden of proving he was not negligent in fluoroscopy was imposed upon the defendant.

In attempting to locate an imbedded needle and remove it from Mary Lee McGehee's foot, Dr. L. Routen of North Little Rock utilized a 30-milliampere fluoroscope through means of which reflected solid matter within the body may be observed. The mechanical arrangement was such that X-ray impulses could be directed for a limited period through pressure upon an electric switch or push button attached to a flexible cord.

While the pressure was maintained the rays were active; but, according to testimony of the only witness other than Dr. McGill[1] who qualified as an expert or who had knowledge in respect of the mechanical equipment, the so-called control or vacuum tube would be destroyed through accumulated heat or energy if the current were applied for an appreciable length of time—ten minutes, Dr. McGill thought.

The complaint alleged that Dr. Routen "burned" the plaintiff's foot "inside" to such an extent that ligaments were partially destroyed, impairing use of the member for more than a year and preventing removal of the needle. No other negligence is expressly charged.

The patient's version was that while she was temporarily in Little Rock the needle became imbedded and

---

[1] Dr. McGill claimed to have a working knowledge of roentgenology.

Dr. Routen was recommended as a competent physician. He required that she go to a hospital; and there, in the patient's presence, the physician washed his hands, put on gloves, and began work, first anesthetizing the foot. Seemingly the operation covered a period of approximately three-quarters of an hour, and Dr. Routen is alleged to have left the room for an additional ten minutes. Incisions appear to have been in the form of a cross with leads from where the needle was supposed to have been.

Within four or five days following these exploratory incisions, part of the foot became inflamed, irritation being such that the patient went to other physicians after she had tried, on two occasions, to have Dr. Routen give treatment, but failed to find him in his office.

Appellee later returned to her mother's home in Jonesboro and was administered to locally.

That there was injury, whether from a physician's negligence or otherwise, is not disputed. Difficulty is that to sustain the judgment it would be necessary to say that when a patient subscribes to the care of a physician,[2] and infection, irritation, or unfavorable pathology follows in circumstances where none of these results would ordinarily attend, an inference arises that there has been lack of care, amounting to professional negligence or that positive conduct amounted to malpractice. Such is not the law in this State, although some courts construe the patient's rights to be that reliance may be placed upon the physician's status as such. Result in those jurisdictions is that when abnormal developments attend, there devolves upon the administering agency a duty to show there was not a want of professional skill, nor was there carelessness or indifference.

If effect of appellee's testimony be argued, with the contention that her explanation of how the *light* was applied for protracted periods should be sufficient, answer is that the *light,* and the electric rays claimed to

---

[2] The terms "surgeon," "physician," and "doctor," for the purpose of this opinion, are used synonymously although the distinction is recognized.

have caused the injury, were distinct—one coming from a bulb used for purposes of illumination, the other flowing from the fluoroscope. There was no sensation, no consciousness of pain from the X-ray applications; only a whirring or buzzing sound. From the fact that the operation and preliminaries consumed almost an hour, appellee concluded that when the ''light'' was on she was subjected to the rays. No distinction is drawn between fluorescent and incandescent light—[it being essential that the room be darkened while the former was used].

The question is, Did the result speak for itself? *Res ipsa loquitur* is ordinarily available where the party charged has exclusive control of the means by or through which the injury or damage is produced, and the result is not such as would reasonably be expected to attend.

But we have very definitely held that the doctrine does not apply (a) to the practice of medicine and surgery, or (b) to the use of X-ray machines.

In *Brown* v. *Dark*, 196 Ark. 724, 119 S. W. 2d 529, it was said: ''. . . If the doctrine *res ipsa loquitur* applied, the judgments might be sustained. But it does not. Medicine and surgery are inexact sciences, and physicians are not guarantors of results.''

In holding that Dr. J. P. Runyan was not liable for the alleged negligence of an assistant who was charged with having misused an §-ray machine, Mr. Justice Wood (*Runyan* v. *Goodrum*, 147 Ark. 481, 228 S. W. 397, 13 A. L. R. 1403) said: ''The doctrine of *res ipsa loquitur* does not apply in such cases because the testimony shows that, on account of the idiosyncrasies of the X-ray machine, one person of a certain type and temperament would be susceptible to a burn while another person of a different type, under the same circumstances, would not be burned. Moreover, it is shown that burns do occasionally occur, in the ordinary course of the exposure, in spite of the highest diligence and skill to prevent them.''

So in the instant case, the theory upon which the judgment rests must be rejected. But it appears that the

case has not been fully developed, and the cause is therefore remanded for a new trial.