ADAMS *v.* HEFFINGTON.

4-9048 226 S. W. 2d 352

Opinion delivered January 30, 1950.

*George F. Hartje,* for appellant.

*Guy H. Jones,* for appellee.

GRIFFIN SMITH, Chief Justice.  Heffington sued Dr. Adams, alleging that dental work negligently done caused an illness, and unnecessary pain and suffering.  From a judgment for $250 the defendant has appealed.

Appellant's excellent brief correctly states the law respecting surgeons, men of medicine, and dentists when charged with professional negligence and where the only evidence is that the patient did not recover, or the malady was not halted, or a secondary and seemingly related infirmity occurred, etc.  We have said that the practice of medicine, surgery, and the use of an X-ray therapeutically, are inexact sciences, and therefore *res ipsa loquitur* as a rule of evidence does not apply.  *Brown* v. *Dark,* 196 Ark. 724, 119 S. W. 2d 529; *Routen* v. *McGehee,* 208 Ark. 501, 186 S. W. 2d 779.

.   .   .   .

Appellant is a dentist who has practiced in Heber Springs, Quitman, Greenbrier, Conway, then at Beebe and back in Conway.  As a result of arrangements made July 29, 1948, Dr. Adams agreed to extract Heffington's teeth for $25, and the amount was paid.  The patient, however, did not want all of the work done at one time.

According to Dr. Adams, he initially extracted three of Heffington's upper teeth, and a deciduous root.[1]  A molar was spoken of as having been badly infected.  The patient was suffering from chronic sinus trouble and some pyorrhea.  In preparing for the extractions Dr. Adams blocked the nerves to prevent pain.  One tooth was broken, requiring use of a rotary instrument called a "burr".  By this method a small groove or "rim" was cut around what is called the process structure; then an "elevator" was used to remove the root.  There was no drilling on or in the tooth, as the term is ordinarily used.  On the contrary, says Dr. Adams, the burr was applied to the outside of the tooth remnant as a means of provid-

---

[1] Dr. Adams explained: "A deciduous root is one that is not a permanent tooth or a baby tooth. . . . The permanent teeth [sometimes] do not come out in time, [and] the permanents push [the deciduous] teeth down where they don't belong; they are wedged in the gums on down between the teeth."

ing a more secure hold for the other instrument. When the upper portion of the tooth broke, Heffington was told what had occurred. An inference deducible from Dr. Adams' testimony is that the patient acquiesced in what was being done. Heffington was told to use warm salt water several times a day as a mouthwash. It was appellant's professional judgment that Heffington was suffering from sinusitus before the teeth were extracted and when he returned at a later date.[2] These conditions frequently improve or the disease may entirely disappear when teeth infected near the antrum are removed. Sometimes root infection causes puncture, or the root itself may be so near the sinus that an opening is left when extraction occurs.

Dr. Adams admitted that he did not use an X-ray before making the extractions, nor did he think it necessary to X-ray the area to determine whether any fragments remained. The opening from which the teeth were removed was sufficient for him to see with the naked eye, and to appraise results. Neither did Dr. Adams think it necessary to refer his patient to a medical man. Part of his testimony on that issue is shown in the margin.[3]

Finally, Dr. Adams asserted that in extracting the three teeth he broke only one; that he removed the root in the manner formerly explained, and the deciduous root was a separate transaction; but, "I told the patient there were deciduous roots left in there, and [asked] him to come back so I could finish the work."

Dr. J. O. Gregson, dentist, a witness called by the plaintiff, testified that he extracted "about" three roots

[2] Dr. Adams testified that on one occasion Heffington called and explained that he was not then ready to have the dental work finished. A charge of $8 was made for what had been done, and $17 was refunded. There was no complaint at that time that the work had been done in a non-professional manner.

[3] Cross-examination of Dr. Adams: Q. "Do you drill people for sinus trouble?" A. "[Yes, sir,] if the teeth bother them." Q. "Are you qualified to treat sinus trouble?" A. "If the teeth are bothering the sinus, that is [a] dentist's work." Q. "When you pull teeth and they become infected, when does that cease to be a dental question and become a medical question?" A. "I don't know about it becoming a medical question." Q. "If he continued to grow worse, would you send him to a medical doctor?" A. "I didn't send him to a medical doctor."

from Heffington's upper right jaw after July 29. Position of the roots was ascertained by use of the X-ray. One sliver had a groove in it, and it appeared to have been drilled. Fragments exhibited to the witness seemed to be those he had removed, and (indicating) "this is one here that had the hole down through it. . . . It came from the upper right first molar. . . . I extracted the root by cutting the gum and using an elevator. There is no point in using a drill when you don't need it, and I didn't need a drill. . . . I took roots out on two different occasions. . . . I could tell that bone was left in the gum if I had broken it off".

Testimony of dentists called by the defendant justified the jury in believing that the roots complained of were negligently left in Heffington's jaw, and that one was drilled through. These witnesses, in identifying the tool or instrument marks, thought that a drill, as distinguished from a burr, had been utilized.

Conceding that the defendant was sufficiently trained, and that his experience was such as to make him a competent dentist, the testimony was legally sufficient, on appeal, to sustain the charge that remnants of roots were carelessly left in circumstances showing need for their removal. In any event, the jury was justified in finding that Heffington's prolonged inconvenience and the attending pain were brought about by appellant's failure to find what others so promptly discovered. Certainly there was substantial evidence in contradiction of Dr. Adams' assertion that the fragments were not parts of the broken tooth.

The explanation Dr. Adams says he made to his patient, and the treatment claimed to have been given, cannot be harmonized with what appellee says. If Heffington's statements are true, the extractions and attending treatment were insufficient to the point of negligence. In important particulars Heffington is supported by one or two of the dentists called by the defendant.

Affirmed.