STATE v. J. W. SUMMERS.

(Filed 9 May, 1917.)

**1. Homicide—Physicians—Abortion—Evidence—Instructions.**

Where a physician is on trial for a homicide charged as a result of his treatment of his patient to cause an abortion, and there is evidence on the part of the State that the treatment itself caused the abortion resulting in death, and on the defendant's behalf that the patient had theretofore used certain means to bring on the abortion, which he had refused to do, but yielded to her request to attend her as a physician under the condition she had herself produced, a request for instruction that there was no evidence sufficient to convict the prisoner apart from the dying declarations of the deceased is properly refused, is objectionable in giving undue emphasis to the evidence of a single witness, restricting the jury to the State's evidence alone, and in requiring them to accept the entire statement contained in the dying declarations, when they had the right to reject or accept any portion of it.

**2. Appeal and Error—Instructions—Contentions—Objections and Exceptions.**

Exception as to the manner of stating contention of counsel in the charge will not be sustained unless the attention of the court is called to it at the time and opportunity afforded of making proper correction

**3. Instructions — Admissions — Evidence — Appeal and Error — Homicide — Abortion—Physicians—Guilty Knowledge.**

> Where exception to the charge is made upon the ground that certain of defendant's admissions were allowed the weight of substantive evidence when they were only admissible in impeachment, and it appears from the charge that it was capable of the correct interpretation, a new trial will not be granted on appeal upon the principle that reversible error must appear. In this case, where a physician was charged with a homicide as the result of an abortion produced by him, *semble*, admission that in other of his cases he had used the same treatment which tends to produce an abortion, is competent as to his guilty knowledge in adopting the treatment.

**4. Evidence—Text-Books—Physicians—Experts.**

> Where the evidence of a medical expert witness is material to the inquiry, and he has testified, on cross-examination, that he would not pursue a certain treatment for his patient, the reading from a medical work on the subject for the purpose of contradiction is properly excluded from the jury.

**5. Evidence—Character—Qualifications.**

> Where a character witness has been properly qualified and has given his evidence as to bad character, he may of his own volition qualify his testimony and state in what respect it was bad.

INDICTMENT for murder, tried before *Justice, J.,* and a jury, at August Term, 1916, of MECKLENBURG.

The solicitor having entered a *nol pros* as to the charge of murder in the first degree, defendant was convicted of the crime of manslaughter and from sentence thereon, appealed to this Court.

*Attorney-General Manning and Assistant Attorney-General Sykes for the State.*

*John M. Robinson and F. I. Osborne for defendant.*

HOKE, J. There was evidence on the part of the State tending to show that, on 27 June, 1916, in the city of Charlotte, the patient named in the bill, being quick with child, applied to the defendant for treatment and with a view and purpose of procuring an abortion; that for a fee of $75 defendant undertook the case, effected the desired purpose, packing the womb with gauze, and, as a result of the treatment, the patient died about sixteen days thereafter.

The defendant, as a witness in his own behalf, among other things, testified that on the day in question the patient applied to him for treatment for the purpose as stated, and that he positively declined, advising her against the course suggested; that she left and, later in the day, returned to his office and entered, saying: "I have done it." Witness inquired: "What have you done?" She answered: "I've fixed

STATE *v.* SUMMERS. .

it." Witness said: "What have you done?" and she replied: "I used one of those tapering pen stocks first, and then I used a lead pencil." That, yielding to her entreaty, he then undertook to look after her case, and, on examination, no other person being present, he found that she had so injured herself with some instrument that an abortion was inevitable, and he packed the womb with sterilized gauze with a view of relieving her in the best way and as soon as possible, and that this was entirely in the line of proper medical treatment under the conditions presented.

On cross-examination the defendant said that, five years before, he was up before the Medical Society under a charge of having committed an abortion; that he was exonerated of the charge, but censured for unethical conduct in reference to the case, and that in the course of his practice he had treated a dozen cases of this kind, and in every one the abortion was committed before he was called in. There was supporting evidence for the defense that, under the conditions as described and testified to by defendant, he had taken the proper course in the treatment of the case.

Under a comprehensive, clear, and impartial charge the jury, accepting the State's version of the occurrence, have convicted the defendant of the crime of manslaughter, and we find no reason for disturbing the results of the trial.

It is chiefly urged for error that the court refused a prayer for instructions by the defendant as follows: "The State relies upon the dying declaration of the deceased, and without such declaration there is no evidence introduced by the State to connect the defendant with the criminal charge; and if you have a reasonable doubt as to the truth of such alleged dying declaration, it is your duty to acquit the defendant."

Taken in connection with defendant's admission that he undertook the treatment of the case and packed the patient's womb with gauze, together with testimony on the part of the State that this treatment was sufficient to produce the abortion, and thus causing the death, and that there was no indication of any mechanical injury otherwise, there were facts in evidence sufficient to justify the conviction of the defendant without reference to the dying declarations. The defendant's position is, therefore, objectionable in giving undue emphasis to the evidence of a single witness, *S. v. Weathers,* 98 N. C., pp. 685-697; in its tendency to improperly restrict the jury to a consideration of the State's evidence alone, and in requiring them to accept the entire statement contained in the dying declaration, when they had a right to accept or reject any portion of it as it might impress them. The prayer, therefore, is rather a hindrance than an aid to a true conclusion, and could only serve to give defendant an undue advantage in the discussion of the case before the jury.

It is further objected that in his Honor's charge prejudicial error was committed in stating certain contentions of the State, as follows: "The State contends that he packed the uterus of the defendant with gauze; and the State contends, further, that the result of that would be, whether the gauze is sterile or not, to produce an abortion; and the State contends that the reason of that is because it is introducing a foreign substance, and that nature comes to the relief of the woman and attempts to expel foreign substances, and in order to expel that foreign substance that there is contraction of the muscles of the uterus, and that the same process naturally follows in order to rid the womb of that foreign substance that would follow in case of natural birth at full time.

(A) "So the State contends, gentlemen, that the defendant did that; and the State contends, further, gentlemen, that he has a habit of doing that; that that was his character and reputation; and that when he did that he did it for the purpose of relieving this young woman who had become in that condition unfortunately and illegally, of relieving her unlawfully of the child that she carried in her womb." (B).

The exception is to that portion of the charge between the letters (A) and (B), and the objection being, as we understand the argument, that his Honor here gave his sanction to the consideration of the defendant's admissions on this subject as substantive evidence when the only legitimate use was in impeachment of his character as a witness.

It is very generally held that an exception as to the manner of stating contentions of counsel will not be sustained unless attention is called to it at the time, thus giving the judge opportunity to make the proper correction. *S. v. Fogleman,* 164 N. C., 461; *Jeffress v. R. R.,* 158 N. C., 215. If it be conceded, as contended by defendant, that this position only applies to statements of fact and relevant inferences thereupon, and does not extend to a case where a court should sanction an erroneous use and estimate of testimony as a matter of law, it does not sufficiently appear, from a perusal of the charge, that the judge committed error in the respect suggested. The charge permits the interpretation, certainly, that the court referred to defendant's admissions in impeachment of his evidence and standing as a witness, and in favor of maintaining the validity of trials unless error is shown, we think this interpretation should be given it. Apart from this, it is not at all clear that these admissions of defendant, "that, in the course of his practice, he had attended as many as twelve cases where a criminal abortion had been committed," permitting the inference that he was a participant, are not substantiative evidence in so far as they may be interpretative of the act he admits doing, to wit, "packing the womb of a pregnant woman with gauze."

While it is the accepted position that the commission of one crime is not evidence on a prosecution for another, there are recognized exceptions to the rule. These exceptions usually appear on charges involving the *crimen falsi,* as to show guilty knowlege in cases of counterfeiting or a guilty purpose or intent in indictments for fraud and deceit or of receiving stolen goods, etc.; but they are not necessarily confined to such cases. In Roscoe's Cr. Ev., p. 100, the author puts the case of *Rex v. Mogg,* reported in 19 E. C. L., p. 420, where, on indictment for administering sulphuric acid to eight horses with intent to kill them, claim by the prisoner that the acid was administered with intent to improve them, etc., the administering of the acid at different times was admitted as relevant on the question of intent. And in same work, p. 100, case of *Rex v. Winkworth,* indictment for robbery, prosecutor was advised by prisoner to give something to a mob to get rid of them, which he did, to show that this was not bona fide advice, but only a mode of committing the offense charged, it was allowed in evidence to prove other demands for money made by the same mob at other houses at different times of the same day. 19 E. C. L., p. 465.

In the case at bar defendant admits "packing a pregnant woman with gauze," a treatment calculated and likely to produce an abortion. He claims and testifies that this packing was done with a beneficent intent and in the line of proper medical treatment. The State contends it was done with criminal intent. It would seem that the fact that he was in the habit of doing this may be evidenced in interpretation of an admitted act capable of a criminal or an innocent intent. Without final conclusion on the question, however, we rest our decision here on the proposition, as stated, that the charge of the court, being capable of a construction clearly correct, such interpretation should be properly allowed it on the exception as presented.

It was insisted further for error that on the cross-examination Dr. John R. Erwin, who had testified for the State as a medical expert, the defendant's counsel was not allowed to read to the witness, in the hearing of the jury, an extract from Peterson on Obstetrics, under circumstances as follows: In answer to question, the doctor stated that he had heard of Peterson on Obstetrics; that he had it in his library.

Q. "Don't this man Peterson describe this method, in his opinion as the best way to do it? Another method? And that it can be performed in a thoroughly aseptic manner, and without any assistance, and without an anæsthetic?" A. "I wouldn't do it."

Q. "Doesn't he say it?" A. "I don't know about that."

Q. "Let me show it to you." The State objects. Sustained. Defendant excepts.

This ruling is clearly sustained, we think, by recent decisions of the Court on the subject. *Tilghman v. R. R.,* 171 N. C., 652; *Lynch v. Mfg. Co.,* 167 N. C., 98, 101. In *Lynch's case* the position is stated as follows: "It is very generally recognized that extracts from medical books are not admissible in evidence, and for the very sufficient reason that the author does not write under the sanctity of an oath and has not been subjected to cross-examination, and the decisions of this State are to the effect that statements from these books may not be presented as such in the arguments of counsel nor introduced by means of questions put on cross-examination, as by reading an opposing opinion from a text-book and asking the witness if it is or is not true, for this would have the effect of putting the statement in evidence and thus accomplish by indirection what is expressly forbidden. *Butler v. R. R.,* 130 N. C., 15; *Huffman v. Click,* 77 N. C., 55; *Melvin v. Easeley,* 46 N. C., 386; for, as said by *Bynum, J.,* in *Huffman's case:* "If this practice were allowed, many of our cases would soon come to be tried not on the sworn testimony of living witnesses, but upon publications not written under oath."

The proposition to read an extract from this medical author under the circumstances stated is contrary to the principles declared in these and other cases, and the exception must be disallowed.

Objection is also made that the court refused to strike out the answer of certain other witnesses as to character, Dr. John R. Erwin and others, who, after saying they knew the character of defendant, qualified their further answer by saying in what respect it was bad. It is the accepted rule that a witness may do this of his own volition, and these exceptions also must be disallowed. *Edwards v. Price,* 162 N. C., 243; *S. v. Hairston,* 121 N. C., pp. 579-582.

Having given the cause most careful consideration, we find no error to defendant's prejudice, and the judgment of the Superior Court is affirmed.

No error.