## MOORE v. STATE.

Opinion delivered November 16, 1931.

*Hal L. Norwood,* Attorney General, and *Robert F. Smith,* Assistant, for appellee.

MEHAFFY, J. Appellant was convicted in the Sebastian Circuit Court of murder in the first degree and sentenced to life imprisonment in the penitentiary. The indictment charged that he killed J. A. Thompson. The killing was on the 28th day of October, 1930, and on the 31st day of October, 1930, the grand jury returned the indictment against him for murder. On the 3d of Novem-

ber the appellant was arraigned, and, being without money or means for procuring counsel, the court appointed Joseph W. Prather to represent him. The court then set the case for trial on November 17th.

On November 7th appellant filed motion for continuance, stating that he was unable to employ counsel, and that the counsel appointed by the court did not have sufficient time to prepare his defense, and that two weeks was an insufficient and unreasonable length of time; that he had a defense, and that there were witnesses he could produce if given time; that the sanity of the defendant would be an issue, and that the appellant, by reason of his condition of mind, was unable to properly assist his attorneys; that the witnesses could not be procured and appellant be ready for trial on the 17th; that there was great public excitement in the minds of the people, and there was great prejudice against appellant, and that he had reason to apprehend that, because of the condition of the public mind, a jury could not be had that would be free to render justice; that the public excitement was such as to influence the jury and prevent his getting a fair and impartial trial.

On November 17th, appellant filed another motion for a continuance, setting up substantially the same grounds. Both motions for continuance were by the court overruled, and exceptions saved.

Appellant then was required to go to trial on the 17th, and on the 18th the jury returned a verdict of guilty of murder in the first degree and fixed his punishment at life imprisonment.

On November 20th, the appellant was given five days in which to prepare and file a motion for new trial. Motion for new trial was filed on the 22d of November; said motion was overruled, exceptions saved, and 55 days given in which to file bill of exceptions. The case is here on appeal.

Several witnesses testified that the appellant shot and killed J. A. Thompson, and appellant himself testified that he fired three shots, and that he was neither

crazy nor drunk; that he was on his way to surrender to the sheriff when apprehended.

We deem it unnecessary to set out the testimony of the witnesses about the killing, there being no dispute about the fact that appellant shot and killed Thompson.

Thompson and his brother, Wayne Thompson, were both killed by appellant, and a number of witnesses testified that he was going to kill another brother. The appellant married the mother of the Thompsons about twenty years ago, and for a short time some of the boys lived with appellant and their mother.

Appellant testified that the Thompson boys had been trying to put him out of the home where he lived with their mother; that they were indebted to him, and would not pay him; that they finally succeeded in driving him from home, and he left the State and was gone about a year. When he returned, he testified that he attempted to get a settlement but failed. He said that on the day of the killing he went by Louis Thompson's store, and, finding him out, went by the store where Wayne and Aubrey Thompson worked; that, as he entered the store, he told them he had come for a settlement, and Aubrey said that he was going to call an officer and have him arrested; that he only fired three shots, and that Aubrey Thompson was shot during the scuffle for the possession of the gun. He said he did not think he had done any great wrong.

There was considerable evidence as to the sanity or insanity of appellant.

The first ground for appellant's motion for new trial was that the court erred in refusing to grant appellant's continuance on the grounds that two weeks was insufficient time for him to properly make his defense, and the second ground alleged in his motion for new trial was that the court erred in not granting his motion for continuance on the grounds of public excitement and prejudice.

The statute provides that the court, upon sufficient cause shown by either party, may direct the trial

to be postponed to another day in the same term or another term.

However, sufficient cause must be shown before the court would have a right to postpone the trial. The motions for continuance were verified, but no evidence was taken, and no showing made other than the statement in the motions themselves, either that two weeks was insufficient time or that there was any great excitement. The motion did not contain the names of any witnesses, nor did it contain a statement or statements what the witnesses would testify to.

This court has repeatedly held that the granting or refusing a motion for continuance is addressed to the sound discretion of the trial court. *Thompson* v. *State,* 26 Ark. 323; *Jackson* v. *State,* 54 Ark. 243, 15 S. W. 607; *Price* v. *State,* 57 Ark. 165, 20 S. W. 1091; *Sullivan* v. *State,* 109 Ark. 407; *Cox* v. *Jonesboro,* 112 Ark. 96; *Morris* v. *State,* 102 Ark. 513, 160 S. W. 239; *Franklin* v. *State,* 85 Ark. 534, 164 S. W. 767; *Rucker* v. *State,* 77 Ark. 23, 90 S. W. 151.

There is no abuse of discretion of the trial court shown. It was not shown that witnesses were wanted, whether they were present in court at the time, where they resided, or what they would testify to, and there was no abuse of discretion in overruling the motions. *Holmes* v. *State,* 144 Ark. 617, 224 S. W. 394; *Gooch* v. *State,* 150 Ark. 268, 234 S. W. 33; *Mason* v. *State,* 152 Ark. 36, 237 S. W. 435; *King* v. *State,* 177 Ark. 812, 7 S. W. (2d) 987.

There was no error committed by the court in overruling appellant's motions for continuance. The granting or refusing motions for continuance is not cause for reversal unless it appears that the trial court abused its discretion.

It is next contended that the court erred in refusing to allow counsel for defendant to read to Dr. Foltz the statement of the Supreme Court in the case of *Bell* v. *State,* 120 Ark. 530, 180 S. W. 186, as to a paranoid condition, and to state whether said statement agreed with his opinion of a paranoid condition. Appellant also con-

tends that the court erred in refusing to permit him to read a treatise on paranoid from Wharton & Stille on Medical Jurisprudence.

In the first place, the record shows that counsel for appellánt was permitted to read from the case of *Bell* v. *State,* but the counsel asked permission to prove by Dr. Foltz that, in his opinion, the statement was a correct statement of paranoiac condition. The court said that the doctor could state his opinion as an expert, based on the testimony in the case, and then appellant's counsel asked to introduce in evidence a statement from Wharton & Stille on Medical Jurisprudence, and the record is silent as to whether there was any objection to this evidence. Dr. Foltz was a witness for the appellant, and appellant was permitted by the court to ask any questions tending to show whether appellant was sane or insane.

The extracts from the medical and law books were not competent, and the court did not err in refusing to permit appellant to introduce them.

"It is very generally recognized that extracts from medical books are not admissible in evidence, and for the very sufficient reason that the author does not write under the sanctity of an oath and has not been subjected to a cross-examination, and the decisions of this State are to the effect that statements from these books may not be presented as such in the arguments of counsel or introduced by the means of questions put on cross-examination as by reading an opposing opinion from text books, and asking the witness if it is or is not true; for this would have the effect of putting the statement in evidence and thus accomplishing by indirection what is forbidden." *State* v. *Summers,* 92 S. E. 328.

The correct rule is that an attorney may use a medical book to aid him in framing questions to be asked of a physician testifying as an expert, but it is not permissible to read from such books to the jury. *Brown* v. *Springfield Traction Co.,* 141 Mo. App. 382, 125 S. W. 236; *State* v. *Brunette,* 28 N. D. 539, 150 N. W. 271; *State* v. *Blackburn,* 136 Iowa 743, 114 N. W. 531; Underhill's Criminal Evidence, § 191.

The witness, Dr. Foltz, put on the stand by the appellant, and was on direct examination. On cross-examination of an expert witness, where he bases his opinion on a text book, he may be cross-examined, and for the purpose of impeaching him, extracts from the authorities may be read; but it is never proper to introduce the books, or extracts from them, except on cross-examination.

The appellant objected generally to giving each of the instructions given by the court on behalf of the State. They were, however, the usual instructions, and we do not find any error in the court's charge.

Appellant, also, in his motion for a new trial, contends that the court erred in refusing to give each of 15 instructions requested by appellant. The record, however, does not show that the appellant requested the court to give any instructions.

The chief defense relied on by the appellant was insanity. Several witnesses testified, and their testimony was in conflict. As to whether appellant was or was not insane was a question of fact properly submitted to the jury, and the evidence is ample to sustain the verdict.

The judgment is affirmed.