VINCENT NICOTRA *vs.* BIGELOW, SANFORD CARPET COMPANY ET AL.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued December 2d, 1936—decided January 8th, 1937.

*Julius B. Schatz,* with whom was *Arthur D. Weinstein,* for the plaintiff.

*Edward S. Pomeranz,* with whom was *George Miske,* for the defendants.

AVERY, J.   The claimant was employed as a laborer by the respondent, Bigelow, Sanford Carpet Company, and on the afternoon of November 27th, 1933, while at work cleaning the inside of a metal tank with an electric brush, he complained that something had got-

ten into his left eye. He reported to the plant surgeon who, with a swab, removed some foreign matter from the inside lower lid of the eye. The claimant thereafter received treatment for his eye and for other troubles from the plant physician and from other physicians and by July 5th, 1934, he was found to be totally blind in the left eye and with less than 10 per cent. vision in the right, a condition of practically total blindness with unfavorable prognosis of any improvement. A hearing was had before the commissioner who concluded that the claimant's disability was causally connected with an injury received by the eye while claimant was working in the tank. The respondent claimed that his condition was due to syphilis or a syphilitic condition, and from a finding and award in favor of the claimant the respondent appealed.

In the Superior Court, various corrections and additions were made to the finding of facts made by the commissioner. It is unnecessary to consider whether or not all these corrections were properly made, because for the most part they do not affect the result. The finding of the commissioner was in considerable detail consisting of some twenty-one paragraphs, the substance of which, with such corrections as are material, is as follows: On November 27th, 1933, the claimant, in the course of his employment, was engaged with another worker in cleaning the inside of a rusty metal water tank. It was dark in the tank and the men worked by flashlight, one operating an electrically driven brush applied against the sides of the tank and the other holding a searchlight. Some time in the afternoon, as the claimant was using the brush, some pieces of metal rust and scale were whirled from the side of the tank and struck him in the left eye. He complained to his fellow-worker that he had been struck in the eye and requested assistance. Shortly

afterward, on that day, the claimant reported to the plant surgeon who found some pieces of foreign matter in his left eye. The surgeon made a swab by winding cotton around an applicator and apparently removed the foreign matter. On the day following, the claimant returned to the first-aid hospital and insisted that there was still something in his left eye. Thereafter, he returned to the plant surgeon on an average of once or twice a day and persistently complained of pain in his left eye and that the eye was bothering him.

Not long afterward, on December 9th, 1933, the company's surgeon sent the claimant to a doctor at Springfield, who gave him some drops for the eye and returned him to the attention of the plant surgeon. The claimant continuously complained about his eye and on one occasion gave the history of having felt total blindness in it when struck on November 27th, 1933. The treatment rendered by the doctor in Springfield and by the plant surgeon did not relieve the claimant's symptoms. He still maintained that his eye was bothering him and felt that there was something in it. On a second visit to the specialist at Springfield, on January 22d, 1934, the latter noticed that the optic nerve head was a little paler than normal and suspected that the claimant was developing an optic nerve neuritis. The doctors gave the claimant no relief. He sought medical attention in Hartford, was treated for some time in the Hartford Hospital, and later went to New York to St. Vincent's Hospital. Claimant's vision was not tested immediately after the accident, but it was taken by the specialist in Springfield on the visit of January 22d, 1934. At that time, the vision in the left eye was found to be two-sevenths of normal and in the right one-half. Prior to the injury, the claimant's vision was apparently normal. He was able to do the tasks which were given him by the factory. After the

injury, he could no longer do his accustomed work and was put at other occupations which required less visual acuity. After some months, the claimant became totally blind in the left eye and his vision in the right was reduced to less than one-tenth of normal and cannot be corrected by lenses.

The commissioner found as a fact that an injury which the claimant received to his left eye on November 27th, 1933, while at work for the respondent-employer precipitated a condition of optic neuritis in the left eye which condition in turn became an optic nerve atrophy with resulting total blindness in that eye. Sympathetically, the right eye was affected by the injury to the left so that the net result of the injury is that the claimant is industrially blind in both eyes.

The Superior Court, in addition to various other corrections to the finding, also made additions to the effect following: On April 14th, 1934, blood tests taken of the claimant showed that he was suffering from syphilis. After receiving treatment for this trouble from the town of Enfield, where he lived, he was, on July 7th, 1934, taken to the Hartford Hospital and treated for syphilis until August 31st of that year; and, after his discharge, for a further period of two weeks returned for antisyphilitic injections and was later examined in New York at St. Vincent's Hospital. These facts found by the Superior Court should have been added by the commissioner as they were undisputed. *Northam* v. *Bunnell Transportation Co., Inc.*, 118 Conn. 312, 313, 171 Atl. 837; *Senzamici* v. *Waterbury Castings Co.*, 115 Conn. 446, 450, 161 Atl. 860; *Sorrentino* v. *Cerososimo,* 103 Conn. 426, 428, 130 Atl. 672. After making the various corrections to the finding, the Superior Court ordered the case remanded to the commissioner to take further evidence and for a

further finding of facts—first, as to whether the claimant complained of loss of vision; and, second, for a finding of the subordinate facts upon which the commissioner based his conclusion that the injury to the left eye caused loss of vision in the right. One reason for the action of the Superior Court in remanding the case for a further finding of facts was that it appeared to the court that the experts who testified before the commissioner in behalf of the claimant based their opinions in part upon an assumption that the claimant had complained to the doctors who treated him of loss of vision. Inasmuch as the commissioner found that the claimant gave a history of having felt total blindness at the time when his eye was struck and further found that after the injury he was no longer capable of doing his accustomed work and was put at other occupations which required less visual acuity, it is not of controlling significance whether the claimant complained to the doctors who attended him of loss of vision. Loss of vision having been shown as developing progressively until it became total, there was sufficient basis in the evidence for that assumption by the experts, and it was unnecessary to remand the case to the commissioner for a finding that the claimant had made complaint to the doctors of such loss of vision.

The real question before the commissioner in the case was whether the blindness which came upon the claimant was caused by the injury to his eye while working in the tank or whether it came about as the result of an optic nerve atrophy due to syphilis as claimed by the respondent. In remanding the case to the commissioner for a further finding of facts upon this question, the Superior Court took the view that the finding of the commissioner upon this point was a conclusion without support in the subordinate facts.

There was conflicting expert testimony bearing directly upon the question and the commissioner's finding was therefore of a primary fact, not a conclusion based upon inference from subordinate facts. It was a medical question upon which the physicians called by the two parties were diametrically in opposition. Two doctors called on behalf of the claimant expressed the opinion that loss of sight which the claimant was suffering was due to the injury received while working in the tank, something having gotten into the left eye which set up a condition which ultimately caused the loss of the sight of both eyes. The medical testimony for the respondent, on the other hand, was that his condition was wholly due to syphilis or the treatment therefor. A conclusion reached by a commissioner by comparison and examination of conflicting professional opinion, by reliance upon one rather than on another, can rarely be found erroneous in law in the absence of bad faith. *Driscoll* v. *Jewell Belting Co.*, 96 Conn. 295, 299, 114 Atl. 109; *Jadovich* v. *Collins Co.*, 109 Conn. 62, 66, 145 Atl. 25; *Kulak* v. *Landers, Frary & Clark*, 120 Conn. 606, 608, 181 Atl. 720. In the conflict of opinion among professional men as to the cause of the claimant's disability, it was the province of the commissioner to determine the matter and with his conclusion neither the Superior Court nor this court may interfere. *Senzamici* v. *Waterbury Castings Co.*, supra, p. 451; *Stier* v. *Derby*, 119 Conn. 44, 51, 174 Atl. 332. It is true that, if the commissioner had accepted the testimony of the defendant's medical witnesses that no trauma to or inflammation of the eye could be discovered when they examined the claimant, the expert opinion of the doctors offered by the plaintiff would be much weakened, if not overcome; but the commissioner was not bound to accept that testimony and the record indicates that he did not.

In the course of the hearing before the commissioner, Dr. William P. Reardon was called as a medical expert on behalf of the claimant and was asked how he accounted for the 90 per cent. loss of vision in claimant's right eye by reason of the injury to the left, and the doctor stated that he could not answer the question from personal experience but that it was fully covered by the medical authorities; and then read to the commissioner a statement from the American Encyclopedia of Ophthalmology, Volume VIII, page 6225, which supported the commissioner's finding as to the effect of an injury to one eye upon the other in the case of a person afflicted with the disease from which the claimant was suffering. The respondent claims that it was error for the commissioner to receive the statement from a medical authority under the claim that such statements are inadmissible. This claim overlooks the nature of the hearing before the commissioner. On such a hearing, great latitude is permitted to the commissioner in the admission of evidence. General Statutes, § 5250, provides that a commissioner on such hearings "shall not be bound by the ordinary common law or statutory rules of evidence or procedure, but may make inquiry in such manner, through oral testimony or written and printed records, as is best calculated to ascertain the substantial rights of the parties and carry out justly the spirit of this chapter." It was within the province of the commissioner to accept the statement in the book, certainly backed as it was by the testimony of the medical man as to the state of the medical authorities upon the subject in question. *Olmstead* v. *Lamphier*, 93 Conn. 20, 25, 104 Atl. 408; 197 Supreme Court Records & Briefs, p. 374, back.

The claim is made that the award is not permissible to the claimant because of a provision of General Stat-

utes, § 5223. The part of the section referred to provides: "In the case of an accidental injury, a disability or a death due to the acceleration or the aggravation of a venereal or syphilitic disease or to the habitual use of alcohol or narcotic drugs shall not be construed to be a compensable injury." Under this section, where the effect of the injury is to accelerate or aggravate the constitutional disease, no recovery can be had. This provision, however, was not intended to prevent compensation in all cases. Under our law, compensation is not made to depend upon the condition of health of the employee or upon his freedom from liability to injury through a constitutional weakness or latent tendency. If the injury is the cause of the disability, it is compensable even though such an injury might not have caused the disability if occurring to a healthy employee or even an everage employee. *Hartz* v. *Hartford Faience Co.,* 90 Conn. 539, 543, 97 Atl. 1020; *Richardson* v. *New Haven,* 114 Conn. 389, 392, 158 Atl. 886. In this case, the ultimate conclusion of the commissioner was to the effect that the injury which the claimant received because of his condition affected the optic nerve in such manner as to result in the loss of sight of both eyes. As the evidence certified supports this position, the case is accordingly compensable. It follows that the Superior Court erred in remanding the cause to the Commissioner for a further hearing.

There is error; the cause is remanded to the Superior Court with direction to enter judgment dismissing the appeal.

In this opinion the other judges concurred.