COMER *v.* PIERCE.

5-1285                                                          302 S. W. 2d 547

Opinion delivered June 3, 1957.

*Fred M. Pickens, Jr.,* and *John D. Eldridge,* for appellant.

*Forrest E. Long* and *Lloyd Henry,* for appellee.

J. SEABORN HOLT, Associate Justice. This is a Workmen's Compensation Case; — § 81-1301 — 81-1349, Ark. Stats. 1947.

Appellee, Pierce, filed his claim with the Workmen's Compensation Commission for an award of compensation for injuries he received on August 27, 1954, while in the employ of appellant, Comer, at a lumber mill and during the course of such employment. May

18, 1955, a hearing before a single commissioner resulted in a finding in appellee's favor, and on appeal to the full commission, the findings of the single commissioner were affirmed. Thereafter, on October 8, 1956, the Circuit Court affirmed the action of the Commission. This appeal followed.

It appears that no determination of the amount of compensation due appellee has yet been made, and only two jurisdictional questions are presented for our determination. 1. Was appellant, Comer, at the time appellee was injured, regularly employing five or more persons in the operation of his lumber mill as contemplated by § 81-1302 (c) Ark. Stats. 1947, and; 2. Was appellee, at the time of his injury, engaged in "agricultural farm labor" as that term is defined in § 81-1302 (c)?

Section 81-1302 (c) Ark. Stats. 1947 provides: "Employment means every employment carried on in the State in which five (5) or more employees are regularly employed in the same business or establishment, except . . . agricultural farm labor, . . ." After a careful review of the evidence, we think the following is, in effect, a fair summation thereof by the Commission: "Respondent is engaged in operating two or three large farms in Woodruff County, Arkansas. In 1954 he was engaged in the process of clearing the timber from some of his lands so that he might use it for planting rice. For a time respondent (appellant) cleared the land and sold the cut timber as it was. He then determined that he could make more money if he obtained a sawmill and cut the timber into lumber and sold the lumber. Respondent purchased a sawmill and began operating in the summer of 1954.

"In the operation of this mill respondent had some employees who worked at the mill and did not work on the farm, and there were other employees who at times worked on the farm and at other times worked at the mill. In the operation of this mill a large majority of the time more than five employees were employed to work at the mill. As a matter of fact, it appears that

for a full crew it took about eight or ten men to operate the mill. The record in this case is clear that more than five employees were employed at the sawmill on August 27, 1954, on which date claimant suffered an accidental injury that arose out of and during the course of his employment while he was operating a tractor moving logs at the skidway at the mill. The tractor turned over onto the claimant and he was injured.

"Claimant was employed by respondent to do whatever work respondent deemed necessary and part of the time claimant was employed in doing work about the farm; that is, he fixed fences, operated a tractor and did a considerable part of the planting. Claimant was then directed by the employer to work at the sawmill, where he had been working for several days prior to the time of his injury on August 27, 1954.

"Respondent advertised in the McCrory newspaper during the period from about August 19, 1954 until about March 24, 1955 rough lumber for sale at $55 per thousand and dressed lumber for $65 per thousand at the mill. Respondent did sell lumber to the general public, and it is his testimony that he used some of the lumber on his farms. Respondent also did custom sawing; that is, he sawed logs which belonged to other persons into lumber and charged these persons on the basis of so much per thousand feet of lumber. At the time of the hearing of this case on May 18, 1955 it was respondent's testimony that he had on hand between 375 and 400 thousand feet of lumber which he had sawed in his mill and which he would be willing to sell."

On these findings of facts, the Commission concluded that "respondent (appellant) was not engaged in agricultural farm labor in the operation of his sawmill and that he had five or more employees employed in his mill at the time the claimant was injured, as well as prior and subsequently thereto . . . that the parties to this cause come within and are bound by the provisions of the Arkansas Workmen's Compensation Law and this Commission has jurisdiction over this claim."

Under our settled rule the findings of fact by the Commission are on appeal given the same verity that would attach to a jury's verdict and will be sustained if supported by any substantial evidence. See *Williams* v. *Gifford-Hill & Co.,* 227 Ark. 340, 298 S. W. 2d 323, 326 and *Sherwin-Williams Co.* v. *Yeager,* 219 Ark. 20, 239 S. W. 2d 1019. In determining the sufficiency of evidence doubts should be resolved in favor of claimant and the evidence should be reasonably and liberally construed in his favor. See *Herron Lumber Co.* v. *Neal,* 205 Ark. 1093, 172 S. W. 2d 252.

We think there was ample substantial evidence to support the Commission's findings that appellant Comer had in his employ, at the time of Pierce's injury, five or more employees working at his mill and that appellant was not engaged in agricultural farm labor in the operation of his sawmill in the circumstances here. In effect, Allen McCain, the mill manager, testified, that the mill had been in operation since June 1954 and that from about July 9, 1954, the mill was never operated with less than five men, that it ran steadily from June 18, 1954, five days a week most of the time. There was other testimony tending to corroborate McCain. It thus appears that five or more men had been regularly employed at the mill for a month or more prior to August 27, when Pierce was injured.

We also agree with the Commission's finding that at the time Pierce was injured appellant was not engaged in agricultural farm labor. In one of our earliest cases, in construing our Workmen's Compensation Act, we said: "These Compensation Acts are entitled to and have universally received a liberal construction from the courts. The humanitarian objects of such laws should not, in the administration thereof, be defeated by overemphasis on technicalities—by putting form above substance." *Williams Mfg. Co.* v. *Walker,* 206 Ark. 392, 175 S. W. 2d 380.

As indicated, appellant Comer, in addition to his farm operations, was engaged in the saw mill business on his farm, to an extent far beyond supplying lumber

for his own needs. He sold lumber to the general public, and did custom sawing for certain parties upon request. His employees worked some eight to ten hours a day at the mill, when it was in operation, and the mill ran some 8,000 to 10,000 feet daily and there was, according to witness McCain, at this mill site upwards of 378,000 feet of lumber. Clearly, we think Pierce was not engaged in *farm labor* at the time of his injury. In an Oregon case,—*Farrin* v. *State Industrial Acci. Commission* (1922), 104 Or. 452, 205 Pac. 984,—the facts showed that a sawmill was owned by a farmer and operated by him on his own farm. The Oregon Supreme Court, in holding that coverage of an injury to an employee, under the Workmen's Compensation Act, was not barred under a provision in the act excluding ''farming and all work incidental thereto'', used the following reasoning, which we think is sound and applicable here: ''Every workman employed in a sawmill is engaged in a hazardous employment, whether that sawmill is owned and operated by a farmer upon his farm, or by some capitalist upon a city block. The location, the ownership, or the size of the mill has not one thing to do with the matter of his coming within the provisions of the Workmen's Compensation Law. The Workmen's Compensation Law was created for the protection of all hazardous occupations therein enumerated, regardless of their extent, and for all workers in such occupations, however, brief their employment. If sawmills owned and operated by farmers are to be excluded from coming under the act automatically, such exclusion must be by legislative enactment, and not by construction.''

As indicated, the evidence seems clear to us that appellant in operating the sawmill in question here was doing so not only to assist him in clearing operations of his land, but for profit. In fact, he admitted as much: (appellant's abstract) ''Two or three years ago, at Mr. Matkin's sawmill I had some (logs) sawed. I realized that I could make more money or profit out of my logs by owning my own sawmill, because of the over-

sawage. The mill was acquired not only to use in assisting in the clearing operations but to enable me to make a profit.''

Finding no error, the judgment is affirmed.