HOLSTEIN v. QUALITY EXCELSIOR COAL COMPANY.

5-1850                                    324 S. W. 2d 529

Opinion delivered June 1, 1959.

*Sam Sexton, Jr.,* for appellant.

*Hardin, Barton, Hardin & Garner,* for appellee.

GEORGE ROSE SMITH, J. This claim by the appellant, Beulah Holstein, for benefits under the compensation law is based on the theory that silicosis was a contributing cause of her husband's death. The commission's denial of the claim was affirmed by the circuit court. The only question presented here is whether there is substantial competent evidence to support the commission's decision.

Charles W. Holstein was a coal miner for many years and was last employed in that capacity by the appellee, from November, 1948, to May, 1952. It is now evident that Holstein was afflicted with silicosis when he left the appellee's employ, though the exact stage to which the disease had progressed is not shown by the record. It does not appear that the disease was ever disabling, for Holstein, after leaving the appellee's mine, worked for an aircraft plant in California for four or five months in the latter part of 1952 and for an oil company in Oklahoma for two months in the spring of 1953.

In May or June of 1953 Holstein returned to California and looked for work. On July 5 he was found on the street in Los Angeles, seriously ill, and was taken to the county hospital. He was found to be suffering from a large gastric ulcer, which had been bleeding for eighteen hours or more. The ulcer was removed by surgery on July 7, and the patient did fairly well until July 13, when his condition worsened and he died. During his stay in the hospital Holstein received fifteen pints of blood by transfusion.

An autopsy was performed. It showed that death was due to pulmonary embolism, which is described as the obstruction of the pulmonary artery by a blood clot. The autopsy did not disclose just where the clot originated, but Dr. Thompson, who performed the greater part of the autopsy, was nevertheless of the opinion that there was a causal connection between Holstein's silicosis and his death. In his testimony Dr. Thompson expressed the view that there is a relationship between chronic pul-

monary disease and the existence of gastric ulcers. Had this testimony been accepted by the commission it would have supported an award.

The trouble is that Dr. Thompson's conclusions are not shared by the other medical witnesses. The decided weight of the evidence is to the effect that the pulmonary embolism was a complication resulting from the operation and the patient's consequent confinement to his bed. Dr. Courville, who also took part in performing the autopsy, states that "the most common cause of acute pulmonary embolism . . . is major surgery." He was of the opinion that silicosis had no bearing upon the ulcer and that Holstein died as a result of conditions unrelated to the silicosis. Dr. Koenig expressed the same view, saying: "This man died of a pulmonary embolism with which silicosis had nothing to do. It did not aggravate his condition. It did not cause his condition, and it bore no relationship whatever to his cause of death." Dr. Darnall testified that silicosis had nothing to do with Holstein's death, and the same conclusion appears in a letter from Dr. Greutter.

The appellant makes two arguments to support her contention that the commission was required to disregard all the medical testimony that contradicts Dr. Thompson. First, it is insisted that the other medical witnesses formed their opinions from a study of the autopsy report, thereby violating the principle that one expert witness is not permitted to express an opinion that is based merely upon the opinion of another expert. This argument is answered by the fact that the autopsy report is a statement of facts rather than an expression of opinion. The report details hundreds of facts that were observed by the physicians performing the autopsy. The report is also accompanied by a summary of the patient's clinical history and of the course of his treatment while in the hospital. These documents were undoubtedly admissible under the statutes that govern in compensation cases, Ark. Stats. 1947, §§ 81-1323 and 81-1327; and it was proper for the expert witnesses to give their opinion on the basis of the information contained in the autopsy

report and the hospital record. *Biddle* v. *Riley,* 118 Ark. 206, 176 S. W. 134, L. R. A. 1915F, 992; *Missouri State Life Ins. Co.* v. *Fodrea,* 185 Ark. 155, 46 S. W. 2d 638.

Secondly, the appellant argues that the medical testimony adduced by the appellee does not constitute substantial evidence, for the reason that in some respects the doctors' opinions cannot be reconciled with all the facts set forth in the autopsy report. For instance, the report indicates that the embolus did not originate at the site of the stomach operation, for the report finds that "all suture lines appear to be securely in place." In the opinion of Dr. Courville, who participated in the autopsy, this finding did not exclude surgery as the cause of the embolism, "because the vein that might have been tied off may have been small. It may have been hidden, you see, under the stomach, under the diaphragm, which is right next to the heart. It's not impossible you could overlook a thing of that sort." It will be remembered that Dr. Thompson, in performing the autopsy, was unable to discover the origin of the embolus. Thus the pivotal question of fact — the exact cause of the pulmonary embolism — could not be resolved by any witness with complete certainty. In this situation the conflicts in the proof naturally had a bearing upon the weight to be attached to the testimony of each witness, but they did not have the effect of depriving the testimony of all substantiality. The issue narrows down to a disputed question of fact, upon which the commission's findings are conclusive.

Affirmed.

JOHNSON, J., dissents.