DAVIS *v.* ARK. BEST FREIGHT SYSTEM.

5-3495                                    393 S. W. 2d 337

Opinion delivered June 7, 1965.
[Rehearing denied September 20, 1965.]

*Tom Gentry,* for appellant.
*Thomas Harper,* for appellee.

Ed. F. McFaddin, Associate Justice. This is a workmen's compensation case. Sidney Davis (claimant and appellant), an employee of Arkansas Best Freight System (appellee) claimed that on December 30, 1960 he suffered a heart attack which arose out of and in the course of his employment. He testified that on December 30, 1960 he drove a truck and trailer loaded with pipe from Little Rock to Crossett; that he experienced considerable difficulty in Crossett in detaching the trailer from the truck and thereby overexerted himself; and that he suffered a heart attack shortly thereafter. The employer resisted the claim, insisting that there was no causal connection between the work appellant did and his heart ailment. The Referee disallowed the claim; the Full Commission disallowed the claim; the Circuit Court affirmed the Commission; and the case is here on appeal. There is no necessity to state the facts in detail because this appeal does not challenge the finding of the Commission on the sufficiency of the evidence. Rather, the challenge here is that the Commission committed errors of law. We will discuss the more important ones that appellant urges.

I. *Allowing A Witness To Read From A Book On Direct Examination.* At the hearing before the Referee the employer called Dr. Drew Agar as its witness and he testified that in his opinion there was no causal connection between claimant's work and his heart attack. On *direct examination* the Referee allowed Dr. Agar to support his opinion evidence by reading typewritten excerpts from several medical textbooks and writers.[1] The

---

[1] Here is the way it occurred. Dr. Agar testified: "It is my professional opinion that there is no causal relationship between the work he was doing and myocardial infarction. . . . I have testified on several cases concerning myocardial infarction and for that reason I selected three or four of the widely accepted textbooks on heart disease—or on myocardial infarction with which we are dealing here, namely, Friedberg, Paul Dudley White, Levine, Cecil's Medicine; and none of those four says that exertion is a causative factor in the production of myocardial infarction. I can read this verbatum if you would like me to.

"Q. If you would.

"MR. GENTRY:

Now is that his opinion or is that the opinion of some other doctor he's reading?

claimant duly preserved his objections and so we now have before us the question whether a doctor—on direct examination—may support his own opinion evidence by reading excerpts which he has copied from medical textbooks and from the writings of other doctors.

It is true that the Workmen's Compensation Commission is an administrative agency and that the technical rules of evidence do not apply to its procedure (Ark. Stat. Ann. § 81-1327 [Repl. 1960]),[2] nevertheless it has been repeatedly held that a litigant has the right to cross-examine a witness. In 58 Am. Jur. 339 the text summarizes the holdings:

"The cross-examination of witnesses is one of the safeguards to accuracy and truthfulness. The test of cross-examination is the highest and most indispensable known to the law for discovery of truth. When a witness has been examined in chief, the other party has the right to cross-examine for the purpose of ascertaining and exhibiting the situation of the witness with respect to the parties and to the subject of the litigation, his interest, his motive, his inclinations, his prejudices, his means of obtaining a correct and certain knowledge of the facts to which he has borne testimony, the manner in which he has used those means, and his powers of discernment, memory, and description. The purposes of the cross-examination is to test the truthfulness of the witness, to sift, modify, or explain what has been said, to develop new or old facts in a view favorable to the cross-examiner, or to discredit the witness, and, if he is the plaintiff, to test his good faith—the righteousness of his case . . . In a judicial investigation the right of cross-examination is absolute, and not a mere privilege of the one against

---

"DR. AGAR:

This is the opinion—these are the opinions—These are excerpts from highly recognized textbooks on heart disease. Dr. Levine in his *Clinical*—

"MR. GENTRY:

(Interrupting) Without the textbook being here, if your Honor please, I want to object."

[2] We construed our statute in *Ward Furn. Co.* v. *Reather*, 234 Ark. 151, 350 S. W. 2d 691; and *Holstein* v. *Quality Excelsior Co.*, 230 Ark. 758, 324 S. W. 2d 529. See also 15 Ark. Law Rev. 141, *et seq.*

whom a witness may be called. In a civil action a party has the right to cross-examine witnesses against him whether the evidence is given ore tenus or by deposition.''

Certainly, here, the claimant had no opportunity to cross-examine the writers of the textbooks and medical treatises which Dr. Agar used to support and bolster his own testimony. We have held that in a court trial a doctor cannot support his own testimony by reading from a medical textbook.[3] In *Moore* v. *State*, 184 Ark. 682, 43 S. W. 2d 228, we said:

''The extracts from the medical and law books were not competent, and the court did not err in refusing to permit appellant to introduce them.

'' 'It is very generally recognized that extracts from medical books are not admissible in evidence, and for the very sufficient reason that the author does not write under the sanctity of an oath and has not been subjected to a cross-examination, and the decisions of this State are to the effect that statements from these books may not be presented as such in the arguments of counsel or introduced by the means of questions put on cross-examination as by reading an opposing opinion from textbooks, and asking the witness if it is or is not true; for this would have the effect of putting the statement in evidence and thus accomplishing by indirection what is for-

[3] In 100 C.J.S. 539, "Workmen's Compensation" § 537, the text reads: "It may be proper in a compensation proceeding to permit a physician to read a statement from a medical book, and the quotation may be competent evidence if the physician testifying represents the quotation to be an accurate statement of medical knowledge on the subject." To sustain the text there are cited two cases, being *Nicotra* v. *Bigelow* (Conn.), 189 A. 603; and *In re Sutton* (Idaho), 361 P. 2d 793. An examination of these cases reveals that in each instance the situation was different from that in the case at bar. In the Idaho case the Court said: "Dr. Johnson's quotation from medical treatises, upon which his opinion was, in part, based, was not assigned as error by appellant, but was discussed only inferentially." The Connecticut case of *Nicotra* v. *Bigelow, supra,* is based on a compensation act which reads entirely different from our act. The Connecticut statute says that the Commission "shall not be bound by the ordinary common law or statutory rules of evidence or procedure, but may make inquiry in such manner, through oral testimony or written and printed records, as is best calculated to ascertain the substantial rights of the parties and carry out justly the spirit of this chapter." This is a much broader power than that contained in our Act.

bidden.' *State* v. *Summers*, 92 S. E. 328. ''The correct rule is that an attorney may use a medical book to aid him in framing questions to be asked of a physician testifying as an expert, but it is not permissible to read from such books to the jury . . .

''The witness, Dr. Foltz, put on the stand by the appellant, and was on direct examination. On cross-examination of an expert witness, where he bases his opinion on a textbook, he may be cross-examined, and for the purpose of impeaching him, extracts from the authorities may be read; but it is never proper to introduce the books, or extracts from them, except on cross-examination.''

The Commission may quote from medical books to explain the findings; but a doctor called to express his opinion must express his own opinion so that he may be cross-examined. He cannot on direct examination bolster his own opinion by quoting from some other doctor who is not subject to cross-examination.

II. *Refusal To Allow A Letter For Impeachment.* After Dr. Agar testified on direct examination the claimant's attorney sought to impeach him by a letter which Dr. Agar had written involving another patient. Dr. Agar had been testifying that work did not cause a heart attack and he had written a letter which indicated the contrary. The claimant's attorney offered the entire letter, but the only part allowed was the last sentence. In order to get the setting, we quote the last paragraph of the letter and emphasize the only sentence in the letter that was allowed for cross-examination and impeachment:

''It would appear from the history that Mr. Holmes has suffered two coronary occlusions, the first in 1957 doing heavy work and the second in 1960 again doing heavy work. It also appears from the history that during the time Mr. Holmes was engaged in light work as a result of his first heart attack he had practically no symptoms of cardiac disease. However when he again engaged in heavy work involving the lifting of 75 to 100

pound weights he again had chest pains and had another coronary occlusion. *It would appear therefore that there was a causal relationship between his work that he was doing on June 24th, 1960 and his subsequent heart attack. It is my professional opinion that there is a definite relationship in this case.*"

In order to get the full effect of the attempted impeachment, certainly the claimant should have been allowed to introduce the letter and not merely one sentence from it.

III. *Refusal To Allow Claimant To Offer Rebuttal Evidence.* On December 6, 1962 the Commission closed the case and heard arguments. While the Commission had the case under consideration it caused the claimant to be examined by Dr. Kahn, who wrote the Commission a six page typewritten letter on March 30, 1963 telling in detail of the examination, the answers the claimant had made, and the doctor's opinion as to the claim. Then on May 2, 1963 the Commission reopened the case for a further hearing, at which time Dr. Kahn offered his letter and testified, and claimant's attorney cross-examined the doctor. The claimant then filed his motion that he be allowed to call two doctors in rebuttal to the testimony of Dr. Kahn. Here is the record of claimant's offer:

". . . . after the Commission has called another witness upon this subject after the case has been closed, it is our contention that the case has been reopened for all purposes, and for the Commission to deny the claimant the right to introduce other proof denies him of his substantial right of due process, and, therefore, we make the offer that if the claimant was permitted to do so, we would introduce two doctors, qualified internists who would testify, in their opinion, that Mr. Davis suffered a coronary occlusion at the time alleged and at the time that Dr. Kahn testified that he had, and that such coronary occlusion and the resulting myocardial infarction bore a causal relationship to his employment, and that it at least aggravated his condition to such an extent that under the law it would be compensable . . ."

The Commission denied the claimant the opportunity to call witnesses in rebuttal to Dr. Kahn's testimony; and we hold the Commission was in error. As aforesaid, the record was closed on December 6, 1962 and the case argued; the Commission then reopened the case on May 2, 1963 to hear further evidence, that of Dr. Kahn. Certainly when the Commission reopened the case to call a witness of its own selection, it should not have refused the claimant the right to offer evidence to rebut the testimony of such new witness. In 88 C.J.S. p. 226, "Trial" § 111, there is a discussion in regard to the reopening of a case to admit further evidence and the holdings are summarized under the subject, "Right of Adverse Party to Reply: If the other party can show that he can probably repel the evidence which the court permits to be introduced after the reopening of the case, and that it takes him by surprise, the court should permit him to do so, and should postpone, adjourn, or continue the case, on his request that the court should do so, . . ."

We can perceive no good reason why the Commission should have denied the claimant the right to offer evidence to rebut the testimony of Dr. Kahn when the Commission had reopened the case to have him testify.

## CONCLUSION

This case involves only procedural matters but we have seen fit to go into these procedural matters in some detail because the Commission is entitled to have guidelines in these matters. We have a fine hard working Commission and these guidelines will be advantageous to the Commission. The judgment of the Circuit Court is reversed and the cause is remanded, with directions that the case be returned to the Commission for procedure not inconsistent with this Opinion.

HARRIS, C. J., and SMITH, J., dissent.

HARRIS, C. J. and GEORGE ROSE SMITH, J. (dissenting). I would likewise reverse the case, for I agree with the majority on Point II, listed as "Refusal to Allow

a Letter for Impeachment." However, I disagree with the majority on the other two points, which are also listed as reasons for reversal.

I think it was entirely proper for the doctor to read from a medical textbook. As stated in 100 C.J.S., Workmen's Compensation, § 537, p. 539:

"Since a compensation tribunal may not be bound to observe or follow the technical or strict rules as to the admissibility of evidence, as discussed supra § 525, such a tribunal has great leeway in the acceptance or rejection of medical testimony, and medical testimony may be admitted in a compensation proceeding although the same evidence would not be admitted were the case other than a compensation proceeding. It may be proper in a compensation proceeding to permit a physician to read a statement from a medical book, and the quotation may be competent evidence if the physician testifying represents the quotation to be an accurate statement of medical knowledge on the subject."

I also disagree with the majority in permitting the case to be reopened. The matter of taking additional proof should properly lie within the discretion of the Commission, and I see no abuse of discretion in this instance. Counsel for appellant received, in advance of the final hearing, a copy of Dr. Kahn's report, and thus knew what the doctor would testify to. In other words, the testimony was not a surprise, and appellant was afforded every opportunity to cross-examine the neutral witness. The majority quotation from C.J.S. refers to **court trials.**

It seems to be that, under the majority holding, the Commission will never feel that it can close a case, as long as one party is requesting the right to offer additional evidence. This simply means that the claim for compensation can drag on interminably. In my opinion, the Commission did not abuse its discretion in refusing to permit additional evidence.

I am authorized to state that Mr. Justice George Rose Smith joins in this concurrence and dissent.