816

Glen HAWTHORNE, d/b/a GLEN HAWTHORNE
WHOLESALE MEAT (Reeder Meat Company)
Uninsured Employer *v.* Gloria DAVIS, Widow of
James DAVIS, Deceased Employee

CA 79-34                              596 S.W. 2d 329

Opinion delivered November 28, 1979
Petition for Review granted January 7, 1980
Affirmed by Supreme Court February 25, 1980
Released for publication April 2, 1980

·Wood, Smith, Schnipper & White, for appellant.

W. H. "Dub" Arnold, for appellee.

JAMES H. PILKINTON, Judge. This is a workers' compensation case. James Davis died in a traffic accident on June 15, 1978. He left appellee as his widow, and two minor children. The Workers' Compensation Commission allowed a claim for death benefits under the Arkansas Compensation Act. Appellant has appealed.

It is well settled that the burden is on the appellee claimant to establish the claim for compensation by a preponderance of the evidence before the Commission. *Crouch Funeral Home, Inc.* v. *Crouch*, 262 Ark. 417, 557 S.W. 2d 392 (1977). It is also well settled that this court on appeal reviews the evidence, and all reasonable inferences deducible therefrom, in the light most favorable to the findings of the Commission which, like those of a jury, will be upheld if there is any substantial evidence to support the action of the Commission. *Barksdale Lumber Co.* v. *McAnally*, 262 Ark. 379, 557 S.W. 2d 868 (1977).

Viewed in the light most favorable to the findings of the Commission, the record discloses the following facts. James Davis was employed by appellant on June 15, 1978, and was working at a slaughter house in Arkadelphia, Arkansas. This business was known locally as the Reeder Meat Company as it was previously owned by the Reeder family but was purchased by Glen Hawthorne in January of 1978. Mr. Glen

Hawthorne also had a meat plant at Hot Springs, and continued to reside in Hot Springs. His son, Howard Hawthorne, who was working for Union Carbide at Hot Springs when his father purchased the plant at Arkadelphia, went to work at the Arkadelphia business. While his father at times directed things over the phone from Hot Springs, Howard Hawthorne represented his father at the Arkadelphia plant and acted for him there. On June 15, 1978, James Davis was working at the slaughter house in Arkadelphia, under the supervision of Howard Hawthorne, and they finished the day's work at the business shortly before noon. Howard Hawthorne asked James Davis to drive him to a livestock auction barn in Glenwood, Arkansas. Hawthorne said he needed to look at some cattle to buy for the slaughter house. Glenwood is located approximately 35 miles northwest of Arkadelphia. James Davis owned a motorcycle and used it to go to work each day. Howard Hawthorne rode on the back of the motorcycle behind Davis from Arkadelphia to Glenwood. Upon arriving in Glenwood, James Davis drove directly to the livestock barn where the regular Thursday sale was in progress. Howard Hawthorne dismounted from the motorcycle and went into the auction barn. Davis drove his vehicle back onto the highway and was in the process of returning to Arkadelphia when his cycle collided with a log truck which turned left in front of him. Davis was killed on impact.

One of the witnesses, Bobby Sanders, testified that he is a practicing attorney in Arkadelphia and also the Municipal Judge; that on June 16, 1978, Gloria Davis (wife of the deceased) was in his office and Howard Hawthorne was called in to discuss the accident. At that time Mr. Sanders was making an investigation for a possible wrongful death action. Mr. Sanders testified as follows with reference to a statement that Howard Hawthorne made to him the day after the accident:

Q. Did he advise you as to what happened that particular day of June 15th, as to why he and James Davis went to Glenwood?

A. Yes. As I recall he was very desirous of helping the Davis family, he was upset about the occurrence of the day before, he was trying to tell me everything that he knew about what occurred because I was investigating it for obvious legal purposes at the time.

Q. Would you relate as he related to you on that date what caused he and James to leave Arkadelphia and go up there?

A. Well, I asked him had they been working that day out at the slaughterhouse and he told me, as I recall, that he and James Davis had been there by themselves that afternoon and that the work was somewhat slow that afternoon and he made the decision, Howard Hawthorne made the decision to close down early, he said, why don't we just take off because I needed to go to Glenwood to look at some cattle at the sale barn. I asked him who was in charge of the plant that day or the slaughterhouse and he said he was. I remember asking him, was he James' supervisor and he said, well, yes, he worked for me, is the words he said.

Clarence Davis and Shirley Hawthorne were present when the above statement was made; and, Gloria Davis was there a part of the time.

Although there was testimony to the contrary, the Commission found that Howard Hawthorne was the supervisor of the employee Davis and the trip of June 15, 1978, was in part for Howard Hawthorne to look at cattle at the sale barn in Glenwood for his father's business. The Commission said:

Death has sealed the lips of James Davis and he cannot be heard on behalf of his widow and children. Respondent admits he was subject to the workers' compensation laws of Arkansas and with knowledge had not obtained coverage until after the death of James Davis.

With nothing more, the weight of the testimony might necessarily favor the respondent; but the testimony of

the only completely disinterested witness, Judge Bobby Sanders, cannot be explained; nor, is there any reason for the impeachment of the integrity of his testimony. Clarence Davis corroborated Bobby Sanders' testimony and Gloria Davis candidly admitted she did not hear Howard's statement to Bobby Sanders. It is incredible that neither Howard Hawthorne nor Shirley Hawthorne remembers Howard's statement to Bobby Sanders.

## I.

Appellant first argues that the Commission erred in finding that decedent's death arose out of and in the course of his employment, such finding not being supported by any substantial evidence. In support of this point, appellant says the authority of an agent cannot be shown by his own declarations in the absence of the party to be affected by them, citing *Zullo* v. *Alcoatings, Inc.*, 237 Ark. 511, 374 S.W. 2d 188 (1964). That was not a workers' compensation case. Further, it is a well established rule of law as to principal and agent that the nature and extent of an agent's authority, where the evidence is in conflict, is a question for the fact finders. *Bradley Advertising, Inc.* v. *Froug Stores, Inc.*, 193 Ark. 639, 101 S.W. 2d 789 (1937). The Commission found that the testimony of Gloria Davis and Clarence Davis supported the testimony of Bobby Sanders, and tended to show that Howard Hawthorne was in fact the deceased's supervisor.

Section 27 of the Arkansas Workers' Compensation Act, Ark. Stat. Ann. § 81-1327(a) (Repl. 1976), provides:

PROCEDURE BEFORE THE COMMISSION. (a) In making an investigation or inquiry, or conducting a hearing, the Commission shall not be bound by technical or statutory rules of evidence or by technical or formal rules of procedure, except as provided by this Act, but may make such investigations or inquiry, or conduct the hearing in a manner as will best ascertain the rights of the parties . . .

100 C.J.S., Workmen's Compensation, § 535 at page 535:

> In a proceeding where compensation is sought for the death or disability of an employee, the testimony of the employer, or a person authorized to act for the employer, is generally admissible as to matters which are within the knowledge of the witness, such as the nature and scope of the employee's employment; and where the technical rules as to the admissibility of evidence are relaxed, a statement signed by the employer may be admitted in evidence . . .

> . . . .

> In a compensation proceeding evidence is admissible as to statements made by an employer or his representative where the statement constitutes a declaration or admission against the employer's interest; and an admission by an employer that workmen were injured in an accident arising out of and in the course of their employment may be admissible in evidence although the claim for compensation is being contested by the employer's insurance carrier.

We find no merit in the first point argued by the appellant.

## II.

Appellant also argues that the Commission erred in finding that the widow of decedent is entitled to benefits. Appellant says there is no proof of dependency in the record as required by law. He cites Ark. Stat. Ann. § 81-1315(c) (Repl. 1976) and points out that in order for a widow to recover benefits under the act she must make some proof of dependency upon the deceased employee. That is true. However, in this case the parties stipulated below that the only fact issue to be presented was simply whether or not the circumstances surrounding the accident and death of Mr. James Davis arose out of and in the course of his employment within the meaning of the workers' compensation laws of the State of Arkansas. The record clearly shows that all

other fact questions, which might have been disputed, were stipulated and agreed to by both sides. Apart from such agreement, appellant did not raise this question below, and cannot raise it for the first time on appeal. *Jeffery Stone Co.* v. *Raulston*, 242 Ark. 13, at 17, 412 S.W. 2d 275 (1967).

## III.

Appellant also argues that the Commission erred in basing its decision in favor of claimant solely on the hearsay testimony of Bobby Sanders. Thus the appellant finally zeros in on what could have been the most crucial issue in this case: Will hearsay evidence alone sustain an award under the Arkansas Workers' Compensation Act? See 3 Larson, *Workmen's Compensation Law*, §§ 79.00 — 79.42 (1952), and Davis, *Administrative Law*, § 14.10 at pp. 291-303 (1958). The residuum rule, discussed by *Larson* and *Davis*, requires a reviewing court to set aside an administrative finding based upon hearsay evidence unless the finding is also supported by other evidence which would be admissible in a jury trial. The residuum rule has been the subject of great controversy. Although the residuum rule actually originated in a workmen's compensation case decided in New York in 1916, *Carroll* v. *Knickerbocker Ice Co.*, 218 N.Y. 435, 113 N.E. 507 (1916), there has been no discussion of it in Arkansas workers' compensation appeals. See Ark. Stat. Ann. § 81-1327(a) (Repl. 1976) as to declarations of deceased employee concerning injury. Also § 81-1325(b)(4) which makes "insufficient competent evidence" a ground for reversal. But also see *Garrison Furniture Co.* v. *Butler*, 206 Ark. 702, 177 S.W. 2d 738 (1944), *Comer* v. *Pierce*, 227 Ark. 926, 302 S.W. 2d 547 (1957), *Holstein* v. *Quality Excelsior Coal Co.*, 230 Ark. 758, 324 S.W. 2d 529 (1959), Covington, Judicial Review of the Awards of the Arkansas Workmen's Compensation Commission, 2 Ark. L. Rev. 139 (1948), and Youngdahl, Rules of Evidence in Administrative Proceedings, 15 Ark. L. Rev. 138 (1960).

Although this point gives rise to a most interesting question, we do not reach it because appellant made no objection to the hearsay evidence of Bobby Sanders and Clarence Davis when it was presented below. An objection should have been made at the time the hearsay was offered before

the Commission. *Clark* v. *Peabody Testing Service,* 265 Ark. 489, at 506, 579 S.W. 2d 360 (1979). This issue cannot be raised for the first time on appeal. In dealing with a similar situation in *Jeffery Stone Co.* v. *Raulston, supra,* the Arkansas Supreme Court said:

> . . . the issue was not raised before the Commission and, under our well established procedural practice, it cannot be raised here. [242 Ark. at p. 17]

As the findings of the Commission are supported by substantial evidence, the judgment of the Commission must be affirmed.

Affirmed.