SCULLIN et al., RECEIVERS, MO. & NORTH ARK. RD.
CO. v. VINING.

Opinion delivered January 22, 1917.

1.  RAILROADS—NEGLIGENT INJURY TO PASSENGER ON FREIGHT TRAIN—
    SUFFICIENCY OF EVIDENCE.—Plaintiff, a passenger on a local freight
    train, was injured by a sudden jerk of the same. Held, the evidence
    adduced was legally sufficient to warrant a verdict in his favor for
    damages.

2.  EVIDENCE—PERSONAL INJURY ACTION—SEVERE JERK OF TRAIN—
    STATEMENTS OF PASSENGERS.—Plaintiff was injured by a severe jerk
    of a local freight train upon which he was a passenger. Held, testi-
    mony of fellow passengers as to the severity of the jerk was admissible.

3.  EVIDENCE—HYPOTHETICAL QUESTION—OMISSION OF UNDISPUTED
    FACTS.—Plaintiff sued a railway company for damages resulting to
    him from the rough handling of a freight train upon which he was a
    passenger. There was testimony to the fact that plaintiff was under
    the influence of liquor when he claimed to have been injured, but
    this was disputed, there also being testimony that he was sober at
    the time of the accident. Held, a hypothetical question propounded
    to physicians, would not, under these facts, be held defective, be-
    cause it omitted to mention the issue of plaintiff's drunkenness, that
    not being an undisputed fact shown by the evidence.

4.  EVIDENCE—CROSS-EXAMINATION OF EXPERTS—STANDARD AUTHOR-
    ITIES.—When a witness is testifying as an expert, it is competent to
    test his knowledge on cross-examination by reading to him extracts
    from standard authorities upon the subject matter involved, and then
    to ask him whether he agrees or disagrees with the authorities.

5.  EVIDENCE—PERSONAL INJURIES—PHYSICAL EXAMINATION—SECOND
    TRIAL.—Upon the first trial of an action for damages for personal
    injuries, at defendant's request, the court ordered the plaintiff to
    submit to a physical examination. The physicians, after such ex-
    amination, testified that in their opinion, plaintiff was only feigning in-
    jury. Upon a second trial, when these same physicians testified that
    from the former examination they were satisfied that plaintiff was
    simulating, it will be held that the court did not err in refusing to
    require plaintiff to submit to another medical examination.

6.  RAILROADS—INJURY TO PASSENGER—OPERATION OF TRAIN.—Under
    Kirby's Digest, § 6773, responsibility is placed upon railroads where
    injury is done to persons or property by the running of trains, and
    proof of injury makes out a prima facie case of negligence. Held,
    a case in which plaintiff, a passenger on a local freight train, was
    injured by a sudden jerk of the same, is within the rule as set out.

7.  DAMAGES—PERSONAL INJURIES—FUTURE PAIN AND SUFFERING.—
    In an action for damages resulting from personal injuries, the jury
    may take into consideration future as well as past physical pain
    and suffering, but it must be reasonably certain that such future pain

and suffering are inevitable, and if they be only probable or uncertain, they can not be taken into the estimate.

8. APPEAL AND ERROR—MISCONDUCT OF JURY—REMARKS IN JURY ROOM. —Where, during the deliberations of the jury in a personal injury action, it is brought to the attention of defendant's counsel that a juror has, in the jury room, made observations showing his prejudice against the defendant, it is the duty of defendant, if he wishes to urge the point, to immediately bring the same to the attention of the court, and it is too late if he waits until after the verdict is rendered.

Appeal from Searcy Circuit Court; *J. I. Worthington*, Judge; affirmed.

*W. B. Smith, J. Merrick Moore, H. M. Trieber* and *Gardner K. Oliphant*, for appellant.

1. The peremptory instruction requested by defendant should have been given. This was a mixed train. The jerk and injury were due solely to running the slack out of the train and unavoidable. The verdict is contrary to all the legal evidence. 10 Ark. 309; 118 *Id.* 352. The verdict is contrary to the physical facts. 71 Ark. 590; 83 *Id.* 22; 90 *Id.* 497; 4 Elliott on Railroads, § 1629. Negligence must be determined by the facts in every case. 7 Mo. App. 359; 55 Me. 444; 31 Ala. 508; 50 Ill. 65; 107 Mass. 496; 3 Allen (Mass.) 410.

Where the verdict is so shocking as to shock one's sense of justice this court will reverse. 10 Ark. 492; 34 *Id.* 639; 70 *Id.* 385; 26 *Id.* 309. The testimony of witnesses for plaintiff is incompetent—that of Clayton is uncontradicted but reasonable and consistent. 101 Ark. 532; 96 *Id.* 504; 80 *Id.* 396. The jerk was not a negligent one. Taking into consideration all the facts there was no negligence. 1 S. W. 140; 15 *Id.* 141; 79 Ark. 608. To entitle plaintiff to recover he must prove that defendant's negligence *caused* the injury. 75 Pac. 1047; 119 Fed. 572; 185 S. W. 768-773.

2. The testimony as to the jerk of the train being negligent was incompetent. They simply stated their opinions as conclusions of facts. 117 Mass. 137.

3. Excerpts from medical books were not admissible in evidence. 106 Ark. 100; 36 Kans. 17;

8 Me. 56; 12 Cush. 194; 59 Am. Dec. 178; 3 Chamb. Mod. Law of Ev., § 2528; Am. Ann. Cas. 1916-A. 793 and note; 106 N. E. 828; 59 Am. Dec. 178; 265 Ill. 338; 129 Pac. 258; 85 N. W. 1002; 212 Mass. 139; 69 Ark. 653.

4. The hypothetical questions propounded were contrary to the rule as laid down by this court. 100 Ark. 518; 87 *Id.* 242;

5. A physical examination should have been granted. The cases 46 Ark. 275; 66 *Id.* 481, and 93 *Id.* 589, tend to the effect that this is discretionary with the court; the court here abused its discretion. 47 Iowa 375; 46 Ark. 275; 148 N. W. 309.

6. The court erred in its charge to the jury. 99 Ark. 385; 93 *Id.* 564; 72 *Id.* 559; 87 *Id.* 321.

7. As to the assessment of damages, see 97 Ark. 358; 46 Am. Rep. 849; 30 L. R. A. 507; 106 Ark. 186; 87 *Id.* 243; 72 *Id.* 559; 82 *Id.* 424, 431. The instructions were erroneous. 90 Ark. 284; 13 Cyc. 144; 3 Hutch. on Car. 805; 61 N. W. 771. It must appear that the disability is permanent. "*Probable*" suffering or injury is not recoverable. 97 Ark. 365; 46 Am. St. 849; 46 Neb. 907; 106 Ark. 186; 87 Ark. 243.

8. The verdict should be set aside for misconduct of the jury. Affidavits were admissible. 34 Neb. 30; 51 N. W. 290; 40 *Id.* 317; 87 *Id.* 34; 55 Me. 568; 1 Swan, 61; 97 Tenn. 206; 36 S. W. 930; 40 *Id.* 1085; 53 S. W. 731; 75 N. W. 537-8; 26 S. E. 413.

9. Conclusion. This was no case for a jury; but if so, it should be reversed for the errors stated. 114 Fed. 465; 73 *Id.* 774; 69 Ark. 653; 111 *Id.* 134, and others.

*Williams & Seawel*, for appellee.

1. A *prima facie* case of negligence was established by proving an injury from the operation of a train. 34 Ark. 624; 73 *Id.*; 81 *Id.* 275; *Ib.* 579; 83 *Id.* 217; 84 *Id.* 81; 87 *Id.* 308; *Ib.* 581; 90 *Id.* 485; 105 *Id.* 22. The issue was settled by the jury and the decision is binding. 73 Ark. 377; 86 *Id.* 145; 89 *Id.* 321.

2. There was no error in the admission of testimony as to the character and extent of the jerk. The effect was a question for the jury. 62 Ark. 254-8-9; 93 *Id.* 124.

3. There was no error in the reading of extracts from standard medical authorities. It is true the authorities are conflicting, but the correct rule is laid down in 16 A. & E. Ann. Cases, 819. This case is ruled by 122 Ind. 225, 7 L. R. A. 90. The opinion of a witness may be tested by reading from medical works. 2 Best on Ev. 882-4; 131 S. W. 831. But if error, it was invited. 66 Ark. 292; 67 *Id.* 47; 75 *Id.* 251; 88 *Id.* 484.

4. The court did not err in permitting counsel to ask the hypothetical questions assigned as error. 58 Ark. 381.

5. There was no error in the instructions. 83 Ark. 217; 94 *Id.* 75; 123 *Id.* 428.

6. There was no error in the refusal to compel appellee to submit to further examination. No abuse of discretion is shown.

7. No act or language of any juror was sufficient to warrant a reversal. No objections were made to the statements of Barnett. The case was fairly tried and fully developed; the physical facts made a case for the jury and their finding should be conclusive.

HART, J. Appellee sued appellant to recover damages for personal injuries sustained by him by being thrown from his seat by a sudden, unusual and violent jerk of the train, while riding as a passenger on one of appellant's freight trains. The jury returned a verdict for appellee in the sum of $1,000.00 and the case is here on appeal.

(1) It is insisted by counsel for appellant that the evidence is not legally sufficient to support the verdict. It is admitted that appellee was thrown from his seat while riding as a passenger in the caboose of one of appellant's local freight trains, but it is claimed that, if he was injured in consequence of being thrown from his seat, that there was no negligence on the part of the appellant. It was shown by witnesses introduced by .

appellant that the movement of the train at the time of the injury complained of was accompanied by only such jerks and jars as are incidental to the ordinarily careful operation of mixed trains. We need not set out this evidence for the reason that the legal sufficiency of the evidence must be tested in the view of appellee's evidence most favorable to him.

Several witnesses testified that they were present in the caboose at the time appellee was thrown from his seat and injured; and that they were in the habit of riding on freight trains and were accustomed to the usual jerks and jars of freight trains. One of the witnesses testified that he had ridden on freight trains about five thousand miles; that he had never seen any other jolt or jar of a freight train that was as hard as this one; that he counted it an extremely hard jolt; that he was thrown from his seat and was slightly injured thereby; that he had never been thrown around before and never before hurt by the jolt or jar of a freight train in which he was riding; that the train in question was a long train and that he knew the noise ordinarily made by a train of that length when it took up slack; that on the day in question the train slowed down and nearly came to a full stop; that without any warning it started up suddenly and the movement of the train threw appellee from his seat and severely injured him. Several witnesses testified to substantially the same state of facts. Appellee himself stated that he had paid his fare to the conductor when he boarded the train at Gilbert, Arkansas, and was going to Leslie, Arkansas, on a local freight train of appellant; that he had not ridden very far when the train slowed down and he thought it was going to stop; that he thought probably there would be a little jar when the train increased its speed and began to brace himself in his seat; that at that time the train started up with a jerk and he was thrown from his seat against the stove with great violence; that he had been engaged in railroading both as a brakeman and conductor and heard no signal of any kind when the train started up again; that the jerk

which injured him was out of the ordinary and was unnecessary under the conditions of the train at that time. This testimony was legally sufficient to warrant the verdict in favor of appellee.

(2)    It is also insisted that this testimony was incompetent. We have carefully examined the testimony of each of these witnesses and think it was competent. Each witness testified that he was accustomed to riding on freight trains and showed that he knew the usual and ordinary jolts and jars in the operation of them. It may fairly be inferred from the testimony of each of them that the jolt in question was an unusual one and one that was not incident to the ordinary operation of a mixed train. It may be true that people who travel more on such trains might be better and more accurate judges than the witnesses in question, still the difference is only in degree, and the subject matter being one of more or less common knowledge. we think the testimony was competent. *St. L. & S. F. R. Co.* v. *Brown*, 62 Ark. 254; *St. L., I. M. & S. R. Co.* v. *Richardson*, 87 Ark. 101; *St. L., I. M. & S. R. Co.* v. *Brabbzson*, 87 Ark. 109; *St. L. Sw. Ry. Co.* v. *Jackson*, 93 Ark. 119.

(3)    It was the contention of appellee that his spine was injured and it was the contention of appellant that appellee was not injured but was simulating. On this branch of the case it is contended by counsel for appellant that the hypothetical questions propounded to two of the physicians by counsel for appellee were contrary to the rule governing such questions as laid down by the court in *Taylor* v. *McClintock*, 87 Ark. 243, and *Ford* v. *Ford*, 100 Ark. 518. In those cases the court held that a hypothetical question must embrace all essential undisputed facts which bear upon the question, and must not embrace any statement or fact which there is no testimony tending to establish. The court further stated that a party has the right to take the opinionof a witness upon the undisputed essential facts and on every state of facts which he claims the evidence tends to establish. It is contended by counsel for appellant that the hypothetical question in the present

case offends against this rule because it wholly omits the fact that appellee had been drinking an excessive amount of whisky on the morning of the accident. It is true the evidence adduced by appellant tended to show that appellee had taken several drinks. of whisky that morning and was under its influence, but the testimony adduced in favor of appellee tended to show that he had not done so and that he was sober at the time of the accident. Therefore the hypothetical questions did not omit undisputed facts shown by the evidence.

(4)    On cross-examination of the medical experts, counsel for appellee were permitted to read to the jury excerpts from acknowledged standard medical authorities treating of the subject testified to by the experts.

Error calling for a reversal of the judgment is predicated upon the action of the court in permitting this to be done. There is a decided conflict in the authorities as to whether it is proper, in cases where an expert does not base his opinion upon a particular authority, to read an excerpt from a scientific authority and ask the expert on cross-examination as to his views concerning such excerpt. Case note to 16 A. & E. Cas., p. 819. In the cases cited below it is held that when a witness is testifying as an expert, it is competent to test his knowledge on cross-examination by reading to him extracts from standard authorities upon the subject matter involved and then ask him whether he agrees or disagrees with the authorities. The case is a clear exception to the rule which forbids the reading of books of inductive science as affirmative evidence of the facts treated of. The purpose of the testimony sought to be elicited is to test the knowledge of the expert and to ascertain the weight of his testimony. We think that no better way could be devised for doing this than to take the accepted authorities upon the subject and to see how his knowledge of the matter corresponds with that of such authorities. *Hess* v. *Lowrey*, 122 Ind. 225, 23 N. E. 156, 7 L. R. A. 90; *Williams* v. *Nally*, 45 S. W. (Ky.) 874; *Egan* v. *Dry Dock, etc., R. Co.*, 12 App. Div. (N. Y.) 556; *Sale* v. *Eichberg*, 105 Tenn. 333,

59 S. W. 1020, 52 L. R. A. 894; *Gulf, etc., R. Co.* v. *Farmer*, 115 S. W. (Tex.) 260, and *Fisher* v. *So. Pac. R. Co.*, 89 Cal. 399, 26 Pac. 894.

(5)   It is next insisted by counsel for appellant that the court erred in refusing to make an order upon appellee to submit to a physical examination at the hands of physicians. This was the second trial of the case. Upon the first trial of the case the court required appellee to submit to a physical examination at the hands of physicians selected by appellant. These physicians testified at the trial that appellee was not injured at all and was simulating. These same witnesses testified at the present trial and said they were satisfied from the examination made by themselves at the former trial that appellee was only feigning to be injured. Another examination could not have added anything to their knowledge of appellee's physical condition. Therefore, the court did not err in refusing to require appellee to submit to another medical examination.

(6)   It is insisted by counsel for appellant that the court erred in giving instruction number 1. This instruction was an exact copy of instruction number 1 as set out in the abstract in the case of *Kansas City Sou. Ry. Co.* v. *Davis*, 83 Ark. 217.   In that case it was held that section 6773 of Kirby's Digest places responsibility upon railroads where injury is done to persons or property by the running of trains, and a *prima facie* case of negligence is made out against the company operating the train by the proof of injury. The injury in question was caused by the running of a train and the court did not err in giving the instruction.

(7)   It is insisted that the court erred in giving instruction number 2. This instruction was an exact copy of instruction number 3 set out in the opinion in *Arkansas Southwestern Rd. Co.* v. *Wingfield*, 94 Ark. 75. The court approved the instruction in that case and what was said there applies with equal force here.

(8)   It also contended that the court erred in giving instruction number 5 upon the measure of damages. There was no error in giving this instruction.   In the

case of *St. L., I. M. & S. R. Co.* v. *Bird*, 106 Ark. 177, the court held that the jury may take into consideration future as well as past physical pain and suffering, but to justify them in doing so it must be reasonably certain that such future pain and suffering are inevitable and if they be only probable or uncertain they cannot be taken into the estimate. See also *St. L., I. M. & S. R. Co.* v. *Armbrust*, 121 Ark. 351. The testimony in the present case on the part of appellee tended to show that he would necessarily suffer pain for some period of time in the future and the instruction only went to the extent of submitting this issue of facts to the jury. The question of permanent injuries was not submitted to the jury in the instruction. It only submitted to them the question of the suffering he would necessarily endure in the future resulting from his injury. The court did not err in giving the instruction. We do not deem it necessary to set out the instruction as it is in the exact language of one approved in a similar case by the court in *Ark. Southwestern R. Co.* v. *Wingfield*, 94 Ark. 75.

(9)     Error calling for a reversal of the judgment is predicated upon the alleged misconduct of the jury in deliberating upon their verdict. The jury were put in charge of a deputy sheriff and sent to the jury room to consider the verdict. The deputy sheriff while out in the hall near the jury room heard one of the jurors state to the others that his wife had rescued a deaf and dumb child of one of the employees of the railroad and saved it from being run over by an approaching train; that his wife suffered a miscarriage as the result of her exertion and all that he had ever gotten out of it was a "cussing" from the section foreman because he had borrowed a plank from the railroad to clean a hog on. We do not think this alleged error calls for a reversal of the judgment. The deliberations of the jury are made in secret. As a rule they are not skilled in law and their illustrations used in weighing the testimony must necessarily take a wide range. Moreover the record shows that the claim agent of the railroad was out in the hall standing by the deputy sheriff and heard the remarks of the juror.

He informed the attorneys of the railroad company about the remarks before the verdict of the jury was returned into the court. If counsel thought the remarks would improperly influence the jury in arriving at its verdict they should have reported the matter to the court at once and not waited until after the verdict was returned. They should not be allowed to speculate upon the result of the verdict and then assign the remarks as error calling for a reversal of the judgment.

The testimony adduced on the part of appellee tended to show that he sustained very serious injuries. The jury returned a verdict for $1,000.00, and if the jury believed the testimony of the witnesses for appellee, the verdict was a very moderate one and cannot in any sense be said to be excessive.

The judgment will be affirmed.