Jo Pearl JEANES, Administratrix of the Estate of Tommy Joe Jeanes, Deceased, Appellant,

v.

E. L. MILNER, William S. Orr and Aetna Casualty & Surety Company, Appellees.

No. 19730.

United States Court of Appeals, Eighth Circuit.

June 8, 1970.

---

Charles A. Brown, Patten & Brown, Little Rock, Ark., for appellant.

J. W. Barron, Little Rock, Ark., for appellee Milner.

W. A. Eldredge, Little Rock, Ark., for appellees Orr and Aetna Casualty & Surety Co.

Before VAN OOSTERHOUT, Chief Judge, and BLACKMUN and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

The plaintiff's minor son, Tommy, died of cancer. His mother, administratrix of the estate, brought this malpractice action. She alleged that Dr. E. L. Milner, a throat specialist, was negligent in failing to properly diagnose, treat and manage her son's case; that Dr. William S. Orr, a pathologist, was negligent in failing to diagnose tissue taken from her son's throat as being malignant; and, that St. Vincent Infirmary [1] was responsible for Dr. Orr's negligence. She further alleged that all defendants were negligent in failing to send slides of tissue taken from her son's throat to Barnes Hospital, St. Louis, Missouri, and to the Armed Forces Institute of Pathology for diagnosis. Finally, she alleged that the

---

1. St. Vincent Infirmary is insured by Aetna Casualty & Surety Company. The latter is the named defendant herein under the Arkansas Direct Action Statute, 6 Ark.Stat.Ann. § 66-3240.

defendants' negligence caused Tommy's death, reduced his chances for survival, and was responsible for his pain and suffering from mid-November, 1965, through mid-January, 1966.

The District Court dismissed the action at the close of the plaintiff's case. It stated: (1) that there was no competent evidence to show that either doctor was negligent in diagnosing or treating Tommy, (2) that there was evidence that both doctors and the Infirmary were negligent in failing to send slides of the tissue to Barnes and A.F.I.P., and (3) that there was insufficient evidence to establish that the negligence was the proximate cause of Tommy's pain, suffering and death.

The plaintiff, on appeal, contends that the defendants' negligence was not limited to their failure to transmit the slides but extended to a failure to properly diagnose, treat and manage the case. She also urges that the evidence supported a finding of proximate cause. The defendants urge a contrary position on each issue.

A brief review of the facts is essential to an understanding of the issues presented.

Tommy Joe Jeanes, age thirteen developed a soreness and swelling of his throat in August, 1965. From August 14 to September 14, Tommy received a series of penicillin injections at the Little Rock Air Force Base Dispensary and Hospital. When the mass in his throat failed to improve, arrangements were made for Tommy to see Dr. Milner.

Dr. Milner first examined Tommy on September 16. He diagnosed the mass as a parapharyngeal abscess, incised the mass draining pus from the area, and prescribed a broad spectrum antibiotic. On September 18, he again incised the mass but found no pus on this occasion. Tommy was subsequently seen by Dr. Milner on September 20, September 23, October 1, October 8, October 15 and October 22. During this time, no improvement occurred and Tommy remained on the antibiotic.

On November 1, Dr. Milner again examined Tommy and reported that the mass was increasing in size and that it was tender and fluxiant. He also noted, for the first time, that Tommy had a tender jugulodigastric node in the left parapharyngeal area.

On November 2, Tommy was hospitalized at St. Vincent Infirmary. The following day, Dr. Milner performed a biopsy on Tommy, taking tissue from the mass in the throat. Dr. Milner personally delivered the tissue to Dr. Orr, the supervising pathologist at the Infirmary. Dr. Orr examined the tissue on the same day and prepared slides of it. He submitted a written report stating that the tissue was abscessed but did not appear to be malignant. Three other Little Rock pathologists subsequently examined the slides at Dr. Milner's request. They filed no written report as to their findings but discussed their findings orally with Doctors Orr and Milner. Dr. Orr's written report states that the three pathologists felt that a "benign lesion" was represented "although it has manifestation [sic] of a most unusual histiocytic proliferating pattern."

On November 17, Dr. Milner performed a second biopsy, taking more tissue from the mass. Dr. Orr again examined the tissue, prepared slides, and submitted a written report stating that "the overall pattern is that of severe inflammatory response within a lymphoid tissue with rather active histiocytosis reaction demonstrated." He stated that multiple stains were being made on the tissue and that an additional report would be given. He made no pathological diagnosis.

On November 18, Dr. Milner told Mrs. Jeanes that he was sending slides of the tissue to A.F.I.P. and to Dr. Joseph Ogura, a St. Louis cancer specialist, with instructions for him to forward them to the Pathology Department at Barnes. He subsequently instructed Dr. Orr to mail the slides to the named parties. On

approximately this same date,[2] Dr. Milner recommended to Mr. and Mrs. Jeanes that Tommy be taken to Barnes for X-ray treatment. They did not follow his advice stating they were reluctant to do so until a definite diagnosis was made.

Tommy was released from St. Vincent Infirmary on November 22. The mass remained in his throat, he continued to suffer severe headaches, he lost the hearing in his left ear, the pain in his throat and neck increased, and he did not sleep well at night. He could not fully open his mouth, and he had difficulty swallowing even small bits of food. From the date of release through December 28, Tommy had weekly appointments with Dr. Milner. At each appointment, Mrs. Jeanes asked Dr. Milner whether he had received a report from Dr. Ogura, Barnes or the A.F.I.P., and, on each occasion, he replied he had not. After the December 28 appointment, when Dr. Milner again stated that he knew nothing more about the slides, Mrs. Jeanes went to the Little Rock Air Force Base to see the Medical Commander, Dr. Jess Richardson. Dr. Richardson called Dr. Milner and arranged for the slides to be sent to him. Dr. Milner then asked Dr. Orr to send additional slides to Dr. Ogura in St. Louis. The slides were sent immediately.

Mrs. Jeanes received from Dr. Richardson a set of the slides containing tissue from the November 3 and November 17 biopsies. She took them and Tommy to Wilford Hall Hospital, Lackland Air Force Base, San Antonio, Texas, arriving there January 6, 1966.

On January 6, 1966, the Pathology Department at Barnes examined the slides sent to it and made a diagnosis of malignant lymphoma—lymphosarcoma.

On January 13, the Pathology Department at Wilford Hall made a diagnosis of poorly differentiated malignant neoplasm from the St. Vincent Infirmary slides and from new slides prepared by it. Wilford Hall forwarded a set of its slides to A.F.I.P. On January 21, A.F.I.P. diagnosed the tissue as malignant lymphoma, poorly differentiated lymphocytic type.

Wilford Hall administered radiotherapy treatments to Tommy's throat and adjacent areas during the period from January 13 to February 18. The mass completely regressed, the pain and suffering terminated, Tommy regained the hearing in his left ear and his headaches disappeared.

Tommy returned to Wilford Hall in June, 1966, for a checkup and further examination. No recurrence was noted. Tommy returned again to Wilford Hall in August, 1966. That examination revealed cancer in the abdomen and small bowels. The malignancy had become systemic. Tommy died in June, 1967.

We apply the following general principles in reviewing this case: (1) Arkansas law determines the standard of care required of the doctors and the Infirmary. Under that law: a physician is required to possess and exercise that degree of skill and learning possessed and exercised by members of his profession or specialty in the same or similar communities, McClellan v. French, Ark., 439 S.W.2d 813 (1969); Gray v. McDermott, 188 Ark. 1, 64 S.W. 2d 94 (1933); Dunman v. Raney, 118 Ark. 337, 176 S.W. 339 (1915); expert testimony is required where the applicable standard of care is not within the common knowledge of the jury, Graham v. Sisco, 449 S.W.2d 949 (Ark.1970); Lanier v. Trammell, 207 Ark. 372, 180 S.W.2d 818 (1944); and a hospital is required to provide that degree of care and attention to its patients as the circumstances require, Walls v. Boyett, 216 Ark. 541, 226 S.W.2d 552 (1950); Durfee v. Dorr, 123 Ark. 542, 186 S.W. 62 (1916). (2) A directed verdict at the close of the plaintiff's evidence should be sparingly granted as it deprives the plaintiff of a determination of the facts by a jury, Compton v. United States, 377 F.2d 408 (8th Cir. 1967); Minnesota Mutual Life Insurance Company v.

2. There is confusion in the record as to whether this conversation occurred in November, while Tommy was still in the hospital, or in late December.

Wright, 312 F.2d 655 (8th Cir. 1963); Hobbs v. Renick, 304 F.2d 856 (8th Cir. 1962); Barron and Holtzoff, Federal Practice and Procedure, § 1075 (Wright ed. 1961). (3) We view the evidence in the light most favorable to the plaintiff giving her the benefit of every favorable inference which may be fairly drawn, Simpson v. Skelly Oil Company, 371 F.2d 563 (8th Cir. 1967); Born v. Osendorf, 329 F.2d 669 (8th Cir. 1964); MacDonald Engineering Company v. Hover, 290 F.2d 301 (8th Cir. 1961); Frisby v. Olin Mathieson Chemical Corporation, 279 F.2d 939 (8th Cir. 1960).

We will discuss seriatim the issues of Dr. Milner's negligence, of Dr. Orr's negligence, of the defendants' failure to send the slides, and of proximate cause.

## DR. MILNER

■ The plaintiff contends that the evidence showed that Dr. Milner was negligent in failing to make an early and a correct diagnosis, in failing to refer Tommy to Dr. Ogura for examination and in delaying an initial biopsy until November 3. We cannot agree.

There is no testimony in the record, expert or otherwise, tending to show that Dr. Milner failed to follow recognized and accepted procedures in making his diagnosis. Indeed, it affirmatively appears that he took those steps which expert witnesses called by the plaintiff considered to be essential, the only exception being that he failed to take cultures of the pus taken from the mass on September 16. There is no showing that this failure was in any way related to his failure to diagnose a malignancy. The most that can be said is that he was mistaken in his diagnosis because he relied on four Little Rock pathologists who diagnosed the mass as benign.

Nor can we find evidence in the record to support the contention that Dr. Milner was negligent in failing to refer the patient to Dr. Ogura. Dr. Milner consulted with five Little Rock physicians in October and November, and none

of them diagnosed Tommy's condition as being cancerous. Although the record does indicate that Dr. Milner had referred some of his patients to Dr. Ogura for treatment, after a diagnosis of cancer, there is nothing in the record to indicate that he relied on Dr. Ogura for diagnosis or that he was required to do so in this case.

Nor can we find evidence in the record to support the plaintiff's contention that Dr. Milner had an obligation to have the biopsy taken before November 3, 1965. Dr. Walter Bauer, a pathologist at Barnes and a witness for the plaintiff, testified that Dr. Milner had an obligation to have such a biopsy taken within four to six weeks after Tommy was referred to him. There was no testimony in the record indicating that an earlier biopsy was necessary. As Tommy was referred to Dr. Milner on September 16 and the biopsy was taken on November 3, Dr. Milner would appear to have acted within the perimeter set by plaintiff's expert witness.

## DR. ORR

The plaintiff contends that Dr. Orr's negligence lay in failing to properly diagnose the tissue taken in the November 3 and November 17 biopsies. The record indicates the following: (1) Dr. Orr examined the tissue on November 3 and November 17, and diagnosed it as benign; (2) three Little Rock pathologists examined slides of the tissue in November at Dr. Milner's request and diagnosed the tissue as benign; (3) Dr. Bauer and a Wilford Hall pathologist examined the slides in January and made an immediate diagnosis of lymphosarcoma; and (4) the plaintiff's expert witness, Dr. Bauer, testified that his diagnosis of lymphosarcoma was based upon his finding that the tissue examined had "effacement of architecture by sheets of large lymphocytes * * * many of which show mitotic figures," that the "many histiocytes present [gave] a 'starry sky' pattern," and that these conditions were rarely observed in benign tissue. Dr. Bauer

testified on cross-examination that interpretation of slides is a matter of judgment on which competent pathologists differ and that the judgment is ordinarily a difficult one to make.

■ On the basis of this record and in the light of Arkansas law, we do not believe that the District Court erred in taking the question of Dr. Orr's negligence from the jury.

■ Expert testimony was clearly required to establish that Dr. Orr did not possess or exercise that degree of skill required of pathologists in Little Rock and similar communities. Graham v. Sisco, *supra*; Lanier v. Trammell, *supra*. Although it was not necessary for Dr. Bauer to testify that Dr. Orr was negligent, McClellan v. French, *supra*, it was necessary for him, as plaintiff's only expert witness on this point, to indicate that a pathologist meeting the requisite degree of competency would reasonably be expected to read the slides as showing a malignancy.

There may be a hint, in Dr. Bauer's testimony, that he felt that Dr. Orr should have been able to do so. Dr. Bauer indicated that the "effacement of architecture" and "starry sky pattern" he observed in the slides were rarely observed in benign tissue; but this hint, in the face of his testimony that interpretation of slides is a matter of judgment and a difficult one to make, was not sufficient to make a submissible question. If the slides ought to have been read as malignant by a competent pathologist, this fact should have been developed by appropriate examination by the plaintiff.

The fact that three other Little Rock pathologists found no malignancy would not, in and of itself, bar plaintiff's right to recovery, but plaintiff was required to have an expert witness testify that the characteristics of the slides were such that a Little Rock pathologist, with a requisite degree of competency, should have been able to examine the slides and to determine that there was a malignancy.

## THE FAILURE TO SEND THE SLIDES TO BARNES AND A.F.I.P.

We agree with the District Court's finding that there was evidence from which the jury could find the doctors and the Infirmary negligent for failing to send the slides to Barnes and A.F.I.P.

■ Initially, we note that expert testimony is not required here since the alleged negligence lies within the comprehension of a jury of laymen. Graham v. Sisco, *supra*; Lanier v. Trammell, *supra*.

On November 18, a day after the second biopsy at St. Vincent, Dr. Milner told Mrs. Jeanes that he was sending slides of the tissue to A.F.I.P. and to Dr. Ogura, a St. Louis cancer specialist, with instructions to forward them to Barnes. The slides were not received by Barnes until early January, 1966, and were never received by A.F.I.P.

Dr. Milner stated that he had instructed Dr. Orr to send the slides. He further stated: "I asked Dr. Orr if he had mailed them and he said that he had, but I made no effort myself to mail any slides whatsover." Dr. Orr stated that he thought that he or someone in the Pathology Department had mailed the slides, but that he was not sure. He indicated that the slides would have been sent in an envelope on which was printed the return address of St. Vincent. The slides had not been returned. Mrs. Jeanes stated that she had asked Dr. Milner at each weekly visit in November and December whether he had received reports on the slides, and that on each occasion, he replied he had not. On December 28, after weekly inquiry by Mrs. Jeanes and after a phone call from Dr. Richardson, the Little Rock Air Force Base Medical Commander, to Dr. Milner, slides were sent to Barnes.

■ Both doctors and the Infirmary had an obligation to have the slides mailed promptly to Barnes and A.F.I.P. There clearly is evidence in this record from which a jury could find that the

defendants failed to fulfill that obligation.

## PROXIMATE CAUSE

We cannot agree with the District Court's holding that "there is no evidence from which the jury could find that the delay of approximately one month in the transmission of [the] slides could have been the proximate cause of [Tommy's] failure to recover from his cancer, or to increase his pain and suffering or to shorten his life." Nor can we agree that the jury could "only find a verdict for the plaintiff based on speculation and conjecture."

The record shows that Dr. Milner told the plaintiff, on November 18, that he was sending the slides of the tissue to A.F.I.P. and Barnes. The slides, however, were not sent until after December 28.

The plaintiff's expert witnesses testified that early diagnosis and treatment of lymphosarcoma is of the greatest importance. One of the experts, Dr. Komet, testified that if the cancer is treated in Stage One, when it is still localized, there is a 35% rate of survival; that in Stage Two, when it spreads to adjacent areas, the rate of survival decreases to 24%; and in Stage Three, when it becomes systemic, the rate of survival is reduced to 0-5%. Dr. Komet further testified that when he first saw Tommy in January, 1966, the lymphosarcoma was in Stage Two and that if the cancer was present at all on September 16, it was in Stage One. Thus, the cancer passed from Stage One to Stage Two between these two dates, and every .day's' delay was prejudicial to Tommy's recovery. Dr. Milner himself testified that early diagnosis means earlier treatment and possibly longer survival.

There is also substantial evidence in the record that Tommy endured significant pain and suffering in the period between November 18 and December 28, and that the radiotherapy treatments he received, beginning in January of 1966 at Wilford Hall, terminated the swelling in his throat and the pain caused by it.

The District Court felt that the Arkansas case of Aetna Casualty & Surety Company v. Pilcher, 244 Ark. 11, 424 S.W.2d 181 (1968), was controlling. We do not believe that it is. In *Aetna*, the issue in dispute was one requiring expert testimony and there was no testimony in the record indicating that the defendant was negligent. Here, the delay of the defendants in sending the slides forward is the basis upon which negligence is predicated, and expert testimony is not required to determine whether that delay is a reasonable one. Furthermore, in *Aetna*, the evidence indicated that the plaintiff could have been infected from a number of different sources. Here, it is clear that Tommy died from cancer and there is evidence in the record from which it can be inferred that his life would have been saved or at least prolonged and his pain lessened had he received early treatment.

In our view, Lanier v. Trammell, *supra*, is indicative of the Arkansas Supreme Court's attitude in cases of this nature. In that case, the court stated:

"It is not required in a case of this kind that the injured party show to a mathematical certainty or to the exclusion of every other hypothesis that his injury occurred as a result of the negligence of which he complains."

*Id.*, 180 S.W.2d at 823.

The court went on to say that if it were necessary to prove proximate cause beyond a reasonable doubt, recovery would be impossible since medicine is not an exact science. See also, Bockman v. Butler, 226 Ark. 159, 288 S.W.2d 597 (1956); Adams v. Heffington, 216 Ark. 534, 226 S.W.2d 352 (1950).

The Supreme Court of the United States has spoken to a contention similar to that argued here by the doctors and the Infirmary. In Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 90 L.Ed. 916 (1946), the Court stated:

"It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-

minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference."

We also find Hicks v. United States, 368 F.2d 626 (4th Cir. 1966), to be persuasive here. In *Hicks*, a physician had incorrectly diagnosed an intestinal obstruction as gastroenteritis. The District Court dismissed the case on the grounds that there was insufficient evidence that the alleged negligence was the proximate cause of the patient's death.

The Court of Appeals reversed, stating: "When a defendant's negligent action or inaction has effectively terminated a person's chance of survival, it does not lie in the defendant's mouth to raise conjectures as to the measure of the chances that he has put beyond the possibility of realization. If there was any substantial possibility of survival and the defendant has destroyed it, he is answerable. Rarely is it possible to demonstrate to an absolute certainty what would have happened in circumstances that the wrongdoer did not allow to come to pass. The law does not in the existing circumstances require the plaintiff to show to a *certainty* that the patient would have lived had she been hospitalized and operated on promptly. * * *" (Emphasis included.)

*Id.* at 632.

On the basis of this record and in the light of Arkansas law, we believe that the District Court erred in taking the question of proximate cause from the jury.

## ADMISSIBILITY OF A MEDICAL TREATISE

■ Finally, the plaintiff has alleged here that the District Court erred in permitting the defendant to read extracts from a medical publication into the record when he was cross-examining plaintiff's expert. The import of the extract was that approximately one-third of the pathologists surveyed had diagnosed slides in a manner contrary to diagnoses made by the remaining two-thirds of the group. Plaintiff's expert was familiar with but had not relied on the publication. The extracts were not used for the purpose of impeaching the expert's testimony.

While there is room for dispute as to what the Arkansas law is,[3] we believe that Scullin v. Vining, 127 Ark. 124, 191 S.W. 924 (1917), cited with approval in Ward v. Lamb, 240 Ark. 850, 402 S.W.2d 675 (1966), authorizes the reading of extracts into a record where the plaintiff's expert is familiar with the publication being quoted. Two decisions of this Court, Woelfle v. Connecticut Mut. Life Ins. Co., 103 F.2d 417 (8th Cir. 1939) and Farmers Union Federated Coop. Ship. Ass'n v. McChesney, 251 F.2d 441 (8th Cir. 1958), appear to be contrary to the view expressed herein; but in the light of the federal practice favoring admissibility of evidence and in the further light of Rule 8–03(b) (18) of the Proposed Rules of Evidence for the District Courts (March 1969), we are reluctant to hold that the District Court abused its

---

3. Davis v. Arkansas Best Freight System, Inc., 239 Ark. 632, 393 S.W.2d 237 (1965), held that on direct examination, a witness may not read extracts from a medical publication as proof of the truth of the statements therein contained. Ward v. Lamb, 240 Ark. 850, 402 S.W. 2d 675 (1966), held that on cross-examination where the witness is not familiar with a particular medical publication, counsel may not read extracts from that publication. It would appear to be a logical, short step to exclude extracts on cross-examination even where the witness is familiar with the particular publication. But an early case, Scullin v. Vining, 127 Ark. 124, 191 S.W. 924 (1917), held that on cross-examination, where the witness is familiar with the medical publication, counsel may read extracts therefrom. *Scullin* appears to remain good law as it was cited with approval in Ward v. Lamb, *supra* at 678.

discretion by following what appears to be Arkansas law.

We remand to the District Court for action consistent with this opinion.