**Burt COLE and Ronnie Clark, Plaintiffs,**

v.

**Dave WILLIAMS, Oklahoma District Attorney Investigator of Adair County; Lloyd King, Chief of Police, Westville, Oklahoma; Ron Gifford; Russell Neff; the City of Westville, Oklahoma, A Municipal Corporation; and the Board of County Commissioners of the County of Adair, Oklahoma, Defendants.**

Civ. No. 84–5190.

United States District Court,
W.D. Arkansas,
Fayetteville Division.

Oct. 4, 1985.

Robert L. Whitlock, Everett & Whitlock, Prairie Grove, Ark., for plaintiffs.

Ronald G. Woodruff, Fayetteville, Ark., and David Harris, Stilwell, Okl., for defendants King, Gifford, Neff and City of Westville, Okl.

Linda L. Gray, Asst. Atty. Gen., Oklahoma City, Okl., for defendant Dave Williams.

W.W. Bassett, Jr., Bassett Law Firm, Fayetteville, Ark., for defendant Adair County.

MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

This is an action brought by the plaintiffs against the defendants under the provisions of 42 U.S.C. § 1983 for an alleged violation of their civil rights by the defendants under color of state law. The case was tried to a jury, and at the close of plaintiffs' case, the court granted motions for a directed verdict made in behalf of defendants King, Neff and the City of Westville, and dismissed the cause of action as to them.

The evidence shows that on Sunday, February 12, 1984, Dave Williams, an investigator for the office of the District Attorney of Adair County, Oklahoma, proceeded to the Westville, Oklahoma, area to attempt to locate and apprehend a Robert Cole for whom that office had a felony warrant outstanding. When he arrived in the Westville area, he talked with Irene Walker who claimed to know Robert Cole and asked her to go with him to attempt to identify him. She agreed, and they proceeded in his automobile, along with Mr. Williams' wife, toward the home of Robert Cole's parents. As they neared that residence, they met a car which, as it turned out, was occupied by at least plaintiffs Burt Cole and Ronnie Clark. Both Dave Williams and Irene Walker testified that at the time they met and passed the car, there were three persons in it, and Ms. Walker identified one of them as Robert Cole, the fugitive. Mr. Williams, because he did not wish to endanger Ms. Walker and his wife during an attempted arrest, drove further down the dirt road on which they were traveling where he let them out of the car to wait until he had made the arrest. After he had passed the car in which the plaintiffs were riding, they pulled on to another dirt road off of the one on which they had been traveling, they claimed to allow one of the passengers to "go to the bathroom."

Williams pulled his car partially across the road on which they originally had been traveling, and when the Cole-Clark car proceeded past him, he claims that he tried to flag them down, but that they pulled

around him and continued down the dirt road. He turned his vehicle around and followed them to the residence of John Gullick.

The evidence indicates that Burt Cole, who was driving the vehicle in which he and the other plaintiff were riding at the time, pulled the vehicle behind the Gullick house where it was barely visible from the road. Williams proceeded to the Gullick residence and placed both of the individuals under arrest, at the time telling them that they had harbored a fugitive and had "run a roadblock." The testimony at the trial shows that there was a great deal of dispute about what occurred at this point. John Gullick, the resident, testified that the plaintiffs came to his house and told him that the "law was after them" and that they asked Gullick to "hide them." Be that as it may, the court believed then and believes now that there were questions of fact about which reasonable minds could differ, and that, thus, a jury question had been made in relation to facts which were important for a determination of this matter.

Although the evidence indicates that Williams did not know it at the time, it now appears that he had followed the plaintiffs from Oklahoma across the Oklahoma-Arkansas line to a point a short distance on the Arkansas side of the line where the arrests were made.

After the arrests, Williams called the Westville police station and a short while later received assistance from defendants Gifford and King. The remaining individual defendant, Russell Neff, arrived with King, but, as already indicated, the court found that the evidence indicated that he played no part in the arrest or the decision to transport the individuals back to Westville, so he was dismissed from the case before it went to the jury.

After the arrests had been made by Williams, defendants Gifford and King transported the plaintiffs back to the Westville jail where they were each incarcerated for a brief period of time, Cole until 11:00 a.m. the next morning, and Clark for, according

to his testimony, 30 minutes to an hour. The charges lodged against them were subsequently either not prosecuted or dismissed.

At the close of the evidence, the court determined that a jury question had been made in relation to whether the plaintiffs had been falsely arrested by Williams, and the jury was instructed in this regard. Because of the provisions of Ark.Stat.Ann. § 43–515 which states an officer from another state who makes a "fresh pursuit" arrest in Arkansas "shall without unnecessary delay take the person arrested before a magistrate of the county in which the arrest was made who shall conduct a hearing for the purpose of determining the lawfulness of the arrest ...," the court determined that the defendants Williams, Gifford and King had violated this provision of law, and the jury was so instructed. The jury was then given an interrogatory asking if the jury found that the arrest by Dave Williams was an unlawful one, and the jury found that it was in respect to the arrest of each of the plaintiffs. The jury then was given interrogatories asking them to fix damages for the unlawful arrest, and a separate interrogatory asking that the jury assess damages in relation to failure by the defendants to take the plaintiffs before a magistrate as required by the Arkansas statute cited above. The jury fixed damages as follows: Burt Cole, for false arrest, $6,000.00; Ron Clark, for false arrest, $5,000.00; Burt Cole, for failure to take before a magistrate, $5,000.00; Ron Clark, for failure to take before a magistrate, $5,000.00.

Defendant Williams has filed a motion for judgment notwithstanding the verdict, motion for a new trial, or motion for remittitur of damages, and defendants Gifford and King have moved for judgment notwithstanding the verdict, for a new trial, for remittitur of damages, and for amendment of the judgment.

The court will first address the questions raised by the motion of Gifford and King in relation to the judgment that was entered in this case. After the jury verdict, the

attorney for the plaintiffs submitted to the court a precedent which called for a judgment in the total amount of $21,000.00 against defendants Williams, King and Gifford, jointly and severally. Frankly, without giving the matter as much consideration as the court should have, the judgment was signed and it was clearly erroneous. The court does not mean to indicate that it believes to any degree whatsoever that there was any wrongdoing on the part of the attorney for the plaintiffs, but the judgment was not accurate in view of the instructions given to the jury and the state of the evidence at the close of the trial, so the motion for amendment of judgment filed in behalf of Gifford and King will be granted.

In this regard, the jury was instructed by the court:

> Plaintiffs' first claim under the civil rights act is based on their arrest by defendant Dave Williams. This claim is against defendant Dave Williams only....

Then, in further instructions, the court advised the jury that they would be allowed to consider any damages suffered by the plaintiffs because of the failure by defendants Williams, Gifford and King to take the plaintiffs before a magistrate as required by Ark.Stat.Ann. § 43–515. Thus, irrespective of what the court does in relation to the other motions now under consideration, defendants Gifford and King are entitled to an amendment of the judgment so as to provide that they are not jointly and severally liable for any damages flowing from what the jury found to be a false arrest by Williams.

■ In the court's view, that was the easy question posed by these filings. Much more difficult questions are raised by the motions of each of the defendants for a judgment notwithstanding the verdict and for a new trial. First, defendant Williams contends that the judgment against him should be set aside for the reason that the law of Oklahoma provides an adequate relief for the plaintiff through a statutory and common law tort action, *citing Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401,

51 L.Ed.2d 711 (1977), and *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and their progeny. While the court might feel that the arguments raised by this defendant "ought to be the law," we are not convinced that it yet is. This is not a case in which it is claimed that the plaintiffs have adequate administrative remedies or other procedures provided for by state law to insure that their rights are protected. The court does not believe that the law yet is that plaintiffs cannot sue in federal court under section 1983 for the mere reason that they could also sue the defendants in state court, and the court does not believe that the cases cited hold that. Thus, the court finds no merit in this contention.

■ However, the court finds a great deal of merit in the position of each of the defendants that the evidence simply does not support a verdict against any of them in the total amount of $10,000.00 for the failure of the defendants to take the plaintiffs before a magistrate as required by Arkansas law. Under the evidence in this case, this violation could have been no more than a violation of a procedural right and, in fact, the jury was, in effect, so instructed. The jury was told that in the event that they found that the plaintiffs sustained no actual damages, they could award only a nominal sum. In spite of this, the jury returned verdicts in favor of each of the plaintiffs in the amount of $5,000.00 because of the failure to take them before a magistrate.

The evidence in the case shows, without dispute, that they suffered no damages because of this technical violation of Arkansas law. The evidence was that the arrest took place on Sunday, and if the defendants had chosen to take them before an Arkansas magistrate, this could not have been accomplished before Monday morning. They would have been incarcerated during this period of time.

In fact, it was learned from the testimony of the plaintiffs themselves that they suffered no additional damages because of

the failure to take them before a magistrate. In fact, each of them testified unequivocally that the embarrassment, stress, and other damages which they claimed they suffered were caused by the arrest and incarceration, and, to no degree, by the technical violation of their right to be taken immediately before a magistrate. As a matter of fact, after seeing these two plaintiffs testify, the court has no difficulty in determining that, prior to seeing a lawyer, they did not have the slightest inkling that they had such a right and the court can find without the slightest doubt that this failure had nothing to do with their damages, if any. The court recognized this at the close of all of the evidence, but because it appeared at that time that the jury was going to be required to consider other aspects of the case, the court chose to submit this matter to the jury in an abundance of caution. The motion for judgment notwithstanding the verdict will be granted in relation to the jury verdict awarding the plaintiffs damages for defendants' failure to take them before an Arkansas magistrate immediately after their arrest. The plaintiffs will each be granted nominal damages of One Dollar ($1.00) for this technical violation of their rights.

That leaves the question of whether there is sufficient evidence to support the jury's verdict that Williams had falsely arrested the plaintiffs, and that they suffered a total of $11,000.00 by such arrest. Speaking frankly, it would not be a great overstatement to say that the court was astounded by the jury verdict in this case, and has little doubt that if it had been the trier of fact, plaintiffs' claims would have been dismissed out of hand. Since that is true, the question arises as to whether that justifies the court in granting either a judgment notwithstanding the verdict or a new trial. The court believes that the answer is clear in relation to whether a judgment notwithstanding the verdict can be granted in view of the evidence in this case. While the court personally does not believe that the plaintiffs were entitled to one red cent in this case, in order to do its duty as it saw it, the court had to, we believe, determine

that there was a jury question to be decided. The evidence was, to a great degree, in dispute about what happened on the roadway at the time that Williams tried to stop the plaintiffs and at their subsequent arrest, so those were matters properly to be determined by a jury, and they were determined by this jury adversely to defendant Williams.

The Court of Appeals for the Eighth Circuit, the court whose decisions are binding on this one, has said, in *Jeanes v. Milner*, 428 F.2d 598 (1970), that judgment notwithstanding the verdict should be sparingly granted because to do so deprives the parties of their right to a jury trial. The test which this court must follow in ruling on the motion for judgment notwithstanding the verdict is well stated in 9 Wright & Miller, *Federal Practice and Procedure: Civil* § 2524 as follows:

> The question is not whether there is literally no evidence supporting the party against whom the motion is directed, but whether there is evidence upon which the jury could properly find a verdict for that party. In determining whether the evidence is sufficient, the court is not free to weigh the evidence or to pass on the credibility of witnesses or to substitute its judgment of the facts for that of the jury. Instead, it must view the evidence most favorably to the party against whom the motion is made and give that party the benefit of all reasonable inferences from the evidence.

(Citing numerous cases, including cases from the Court of Appeals for the Eighth Circuit.)

The Court of Appeals for the Second Circuit, in *Simblest v. Maynard*, 427 F.2d 1 (1970), stated the test that is to be applied in words that have been oft repeated:

> Simply stated, it is whether the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached.

Thus, in view of the disputed evidence in this case, the court has no choice when it applies what is clearly the law but to overrule the motion for judgment notwithstanding the verdict.

In view of the court's feeling about this case as set forth above, the question of whether a new trial can be granted is much closer. In this regard, after reviewing the cases, it becomes evident that trial courts in every other jurisdiction of the country have a great deal more discretion in granting motions for a new trial than in the eighth circuit. The law in almost every jurisdiction except this circuit is well stated in 11 Wright & Miller, *Federal Practice and Procedure: Civil* § 2803 *et seq.*:

> Rule 59 gives the trial judge ample power to prevent what he considers to be a miscarriage of justice. It is his right, and indeed his duty, to order a new trial if he deems it to be in the interest of justice to do so.... Ultimately the motion invokes the sound discretion of the trial court, and appellate review of its rulings is quite limited.

Then, in section 2806, in discussing the trial court's discretion in granting a new trial on the ground that the verdict was against the weight of the evidence, the article states:

> The power of a federal judge to grant a new trial on the ground that the verdict was against the weight of the evidence is clear....
>
> The matter is complicated because of the recurrent tendency on the part of courts to confuse the standard for a new trial with that for a directed verdict or a judgment notwithstanding the verdict. This has two consequences, both of which are undesirable. Occasionally courts state that a verdict should be directed whenever the court would be justified in setting aside a verdict and granting a new trial. This is far too lax a test to use for a directed verdict, as has been discussed in detail in connection with Rule 50. Other courts say that a new trial may be granted on this ground only if a verdict might have been directed.

This puts the new trial standard far too high. Despite occasional misstatements of this kind, most courts have recognized the clear distinction between the two kinds of motion and the standards applicable to each.

> Thus on a motion for a new trial—unlike a motion for a directed verdict or for judgment notwithstanding the verdict— the judge may set aside the verdict even though there is substantial evidence to support it. He is not required to take that view of the evidence most favorable to the verdict-winner.... But on a motion for a new trial on the ground that the verdict is against the weight of the evidence, the judge is free to weigh the evidence for himself.

That seemed to be the law in the eighth circuit until 1972, *Bates v. Hensley*, 414 F.2d 1006 (1969). However, in *Fireman's Fund Insurance Co. v. Aalco Wrecking Co., Inc.*, 466 F.2d 179 (1972), the Court of Appeals for the Eighth Circuit narrowed drastically, in this court's view, a trial court's discretion to grant a new trial. The law in the eighth circuit, after *Fireman's Fund*, appears to be that a trial court may not grant a motion for a new trial unless it finds that at the very least the court can say that the verdict is against the "clear weight," "overwhelming weight," or "great weight" of the evidence. *See Fireman's Fund, supra*, at 186–87, and *Goldsmith v. Diamond Shamrock Corp.*, 767 F.2d 411 (1985), at 416. In fact, if the court means what it says in *Fireman's Fund*, the test might even be more severe than that. At p. 187, the court, in deciding to overrule the trial court's granting of a new trial, said:

> The evidence is such that reasonable men may differ as to the result, therefore, the determination should properly be left for the jury.

If that is the test, the court has a great deal of difficulty distinguishing that test from the one that applies to the granting of a motion for a directed verdict or for judgment notwithstanding the verdict. If that is, indeed, the law, it appears that Rule 59

is superfluous. Be that as it may, this court recognizes its role in the federal judiciary system, and recognizes that it is not its function to state what the law is in this respect, but that it must, if it understands the clear directives of the court of appeals, follow them. In this case, while the court would not have reached the verdict that the jury did, as already indicated, the court cannot quite say that the verdict is against the "clear weight" of the evidence, nor the "overwhelming weight" of the evidence, nor the "great weight" of the evidence, and certainly cannot say that reasonable minds cannot differ as to the result. For these reasons, although the court believes that the verdict was a "bad one" when viewed from the court's perspective, it believes that it cannot meet the tests which it understands were laid down by *Fireman's Fund, supra,* and *Goldsmith, supra.* The motion for new trial will also be denied.

In summary, the court finds that it should not have signed the judgment awarding a joint and several judgment against all of the defendants, but, instead, that the judgment for false arrest should be awarded against defendant Williams only. Additionally, for the reasons set forth above, the court finds that there was not sufficient evidence to support the jury's award of a total of $10,000.00 for damages allegedly suffered by the plaintiffs for the failure to take them before a magistrate at the time of their arrest as required by Arkansas law. Instead, the court awards each of them the sum of One Dollar ($1.00) against the defendants, jointly and severally, for this technical violation of their rights. For the reasons stated above, with the exceptions set forth above, the motions for directed verdict and for a new trial are denied.

That leaves the question of the proper attorneys' fees to be awarded in this case. The attorneys for the two defendants dismissed from the action at the close of the case have moved that they be awarded their fees. The court finds, without question, that such requests are without merit. Unlike plaintiffs, the law is that defendants may not be awarded attorneys' fees unless the court can say that the claim was frivolous, unreasonable, or without foundation. *See* numerous cases cited at note 189 of the annotation to 42 U.S.C.A. § 1988.

That leaves the question of the attorney's fees to be awarded to the attorney for the plaintiffs in this case. Plaintiffs' attorney has filed a motion and affidavit requesting attorney's fees in the amount of $11,550.00 for 154 hours at $75.00 per hour, and $1,371.00 for expenses. Since the plaintiffs are the prevailing parties in this case, they are entitled to receive reasonable attorney's fees, and the court finds that the $75.00 per hour rate requested by Mr. Whitlock is appropriate under the circumstances. However, because the court personally knows the attorney for the plaintiffs, and knows him to be an honest man, it has a great deal of reluctance in questioning the number of hours allegedly spent in this case, but, under the circumstances, it feels that it must. Plaintiffs' attorney has requested that he be paid for 154 hours. That is more than 19 eight-hour days doing nothing more than work on this case. In the court's view, this was not a particularly difficult case to prepare and try and if the the attorney for the plaintiffs did, indeed, spend the number of hours on this case which he requests, the court must conclude that such time was not reasonably spent.

For example, plaintiffs' attorney requests eight hours for drafting the complaint and another two for amending it. He requests a total of four hours for discussing the case with his law partner, and another four for discussing it with a lawyer who he asked to "stand in for him" at depositions which he did not attend, and another two hours for reviewing those depositions. In fact, because the court was called upon to rule in relation to discovery controversies that arose shortly before trial, the court knows that the "stand-in" was necessary only because the court set a deadline for the depositions to be taken after the court came to believe that the plaintiffs and their attorney had not cooperated with defendants in making them-

selves available for depositions and in getting the matter ready for trial. In fact, the court believed at the time that the evidence of non-cooperation had reached the point that the court set a discovery deadline and advised that it would seriously consider the harsh remedy of dismissing the action if such deadline was not met. The above are only examples of why the court feels that it has no choice but to question the fee request in this case, and in fact, has an obligation to do so.

■ Plaintiffs' attorney is entitled to a reasonable fee, and the court will now attempt to determine what is reasonable under the circumstances. The statement lists conferences and interviews totaling 51 hours, or well over a full work week doing nothing but interviewing witnesses and engaging in conferences, and this does not include the four hours for discussing the matter with a stand-in for the depositions and the four hours discussing his case with his law partner. The court believes that, with the limited facts present in this case, plaintiffs' attorney was not justified in spending more than 24 hours or three full work days in interviews and conferences. Plaintiffs' attorney will be awarded $1,800.00 for this item.

■ For the reasons already stated, the court does not believe that it was reasonable to confer with the attorney who stood in at the depositions discussed above so the four hours claimed for this will be denied. Likewise, for the reasons already stated, the court finds that the additional attorney would not have been necessary if the plaintiffs had cooperated in discovery and trial preparation as they should have, so the $450.00 claimed as an expense representing the amount paid to the other attorney will not be allowed. Likewise, the court simply does not believe that it is "fair" for the defendants to be required to pay for the four hours that the plaintiffs' attorney and his partner discussed this case, so those items will not be allowed.

■ Plaintiffs' attorney claims a total of 26.5 hours or almost three and one-third

eight-hour days researching this case. As already indicated, section 1983 cases have come, in these modern times, to be commonplace, and three and one-third workdays researching this question would not appear to be justified. The court will grant eight hours, or $600.00, for this item.

■ A total of ten hours is claimed for drafting the complaint and amended complaint in the case. If better than a working day was spent drafting the complaint, it would not appear to be justified. A complaint no more complex than this one should not have taken three hours, but the court will allow three hours, or $225.00, for drafting the complaint and amended complaint.

Four and one-half hours is claimed to "review answers of Lloyd King and Ron Gifford and research the basis of their motions to dismiss." This item was not included in the research discussed above. In addition, another two hours is claimed to review the answer of Dave Williams, and still another two hours to review the answers to amended complaints. The court will allow three hours, or $225.00, for these services.

■ Two hours is claimed to "review interrogatories propounded by defendants." Apparently all that was done was that they were reviewed, because the file reflects that the interrogatories were propounded to the defendants on June 10, 1985, and they had still not been answered when the discovery controversy which the court alluded to above arose shortly before the trial. It is noteworthy that there is no claim for answering interrogatories—only reviewing them. No fee will be allowed for this item.

This leaves a claim for four hours to review defendants' motion to dismiss, 1.5 hours to complete interrogatories to defendants, two hours to prepare pre-trial information sheet, three hours to prepare jury instructions, three and one-half hours to review defendants' pre-trial information sheets and lists of proposed witnesses, nine hours for trial preparation, and 16 hours

720

for trial. The court will allow 16 hours for trial and four hours for trial preparation, 1.5 hours for interrogatories to defendants, one hour to prepare pre-trial information sheet and list of proposed witnesses, 1.5 hours to prepare requested jury instructions, and one hour to review defendants' pre-trial information sheet and list of witnesses. In summary, the total fees allowed will be $4,725.00.

In addition, the plaintiffs have requested a total of $1,371.00 in claimed expenses, including the $450.00 for the "stand-in" attorney already disallowed. In addition, $150.00 is claimed for witness fees, presumably for five witnesses. However, the record reflects that a total of seven persons were called to the witness stand by the plaintiffs, but notes that three of these were the defendants, and doubts that they were paid a witness fee. Two of the remaining four were the plaintiffs themselves who are not entitled to witness fees. That leaves two witnesses, Littlejohn and Halfacre, who are entitled to fees for a total of $60.00.

One Hundred Dollars ($100.00) is claimed for "Deliver of Subpoenas" and another $500.00 for "Travel" with no further itemization. The court cannot determine what these expenses are for and declines to approve them at this time. The attorney for the plaintiffs may furnish substantiation of these costs within ten (10) days from the date of this opinion if he desires.

That leaves a claim of $111.00 for "Court Reporter (appearance Fee 7/23/85" [sic]. The discovery controversies which the court has discussed above which required the court's intervention occurred on August 1, 1985. During that controversy, documents were filed which showed an aborted deposition on July 18, 1985, for which the plaintiffs did not show, although no notice that this was to occur was given to the attorneys for the defendants until after they had appeared for the deposition. At that time, certain documents were filed with the court which included a transcript of the July 18, 1985, aborted deposition.

At the time, the court was of the understanding that no depositions had been taken and a deadline of August 8, 1985, was set. If the fee of $111.00 is the cost of that deposition, it will not be allowed. In any event, even if it was for a deposition taken by plaintiffs, it will not be allowed unless it was used during the course of the trial. The record does not reflect that any depositions were used during the trial, and the court does not recall any being used, even for impeachment purposes. For this reason, this item will be disallowed.

As to expenses, plaintiffs will be reimbursed for the $60.00 filing fee and $60.00 for witness fees. No other items of expenses will be allowed except that, as indicated above, plaintiffs may supply, if they desire, proper itemization and substantiation for the costs for delivering subpoenas and for travel.

Because the plaintiffs have technically prevailed on all points, including the technical violation of their right to be taken before a magistrate upon their arrest, and for the further reason that it would be impossible to equitably divide the fees and expenses among them, based on the record in this case, the court finds that the defendants shall be jointly and severally liable for such fees and expenses assessed.

A separate judgment in accordance with this memorandum opinion will be contemporaneously entered.